[No. S147171. Feb. 11, 2008.]

FARM RAISED SALMON CASES.

## Counsel

Hagens Berman Sobol Shapiro, Craig R. Spiegel, Lee M. Gordon, Elaine T. Byszewski and Steve W. Berman for Plaintiffs and Appellants.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Albert Norman Shelden, Assistant Attorney General, and Ronald A. Reiter, Deputy Attorney General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Kevin S. Golden for The Center for Food Safety as Amicus Curiae on behalf of Plaintiffs and Appellants.

Kamala D. Harris, District Attorney (San Francisco), June D. Cravett, Assistant District Attorney; Gary Liberstein, District Attorney (Napa), Daryl Roberts, Deputy District Attorney; Stephan R. Passalacqua, District Attorney (Sonoma), Matthew T. Cheever, Deputy District Attorney; Thomas J. Orloff (Alameda), Lawrence C. Blazer, Assistant District Attorney; Dolores A. Carr, District Attorney (Santa Clara), Robin B. Wakshull, Deputy District Attorney; Edward S. Berberian, District Attorney (Marin), Robert E. Nichols, Deputy District Attorney; James P. Fox, District Attorney (San Mateo), John E. Wilson, Deputy District Attorney; Gregory D. Totten, District Attorney (Ventura), Gregory W. Brose, Deputy District Attorney; Dean D. Flippo, District Attorney (Monterey), Steven Hollett, Deputy District Attorney; David W. Paulson, District Attorney (Solano), Criselda B. Gonzalez, Deputy District Attorney; Bonnie M. Dumanis, District Attorney (San Diego), Patricia Pummill, Deputy District Attorney; Bob Lee, District Attorney (Santa Cruz), William Atkinson, Deputy District Attorney; Rockard J. Delgadillo, City Attorney (Los Angeles) and Don Kass, Assistant City Attorney, as Amici Curiae on behalf of Plaintiffs and Appellants.

Akin Gump Strauss Hauer & Feld, Rex S. Heinke, David C. Allen, Johanna R. Shargel; Streeter & Nangano, Thomas Barclay, Michael Nangano, Michael L. Coates; Greenberg, Glusker, Fields, Claman, Machtinger & Kinsella, Greenberg Glusker Fields Claman & Machtinger, Norman Howard Levine; Ervin, Cohen & Jessup, Allan B. Cooper, Tamara L. Dewar; O'Melveny & Myers, Carla J. Christofferson; Seyfarth Shaw, Jay W. Connolly and Geoff S. Long for Defendants and Respondents.

## Opinion

**MORENO, J.**—Plaintiffs filed a class and representative action alleging that various grocery stores violated state law by selling artificially colored farmed

salmon without disclosing to their customers the use of color additives.[1] Defendants successfully demurred in the trial court, arguing the action was preempted by section 337(a) of title 21 of the United States Code, a provision of the Federal Food, Drug, and Cosmetic Act (FDCA) (21 U.S.C. § 301 et seq.).[2] The Court of Appeal affirmed the resulting judgment of dismissal.

We granted review to decide whether plaintiffs' action was preempted by the FDCA. We conclude that section 337(a) does not preempt the action as plaintiffs do not seek to "enforce[], or to restrain violations" of, the FDCA. (§ 337(a).) Rather, plaintiffs' claims for deceptive marketing of food products are predicated on state laws establishing independent state disclosure requirements "identical to" the disclosure requirements imposed by the FDCA, something Congress explicitly approved in section 343-1. (§ 343-1(a)(3).) Accordingly, we reverse the Court of Appeal's judgment and remand the matter to that court for further proceedings consistent with our opinion.

## I.  BACKGROUND

### A.  *Facts and Procedural History*

Various individuals initiated separate actions against defendants alleging the grocery stores sold artificially colored farmed salmon without disclosing to consumers the use of color additives.[3] The separate actions were coordinated in Judicial Council Coordination Proceeding No. 4329.

In March 2004, plaintiffs filed a coordinated complaint alleging as a class and representative action that fish farmers feed farm-raised salmon the chemicals astaxanthin and canthaxanthin to obtain a color of flesh resembling that of wild salmon.[4] Plaintiffs allege the flesh of farm-raised salmon appears grayish without the chemical additives and that consumers believe the color of salmon is an indication of its origin, quality, freshness, flavor, and other characteristics. Plaintiffs allege that concerns have been raised about the

---

[1] The grocery stores include Albertson's, Inc., Safeway, Inc., The Kroger Company, Trader Joe's, Costco Wholesale Corp., Whole Foods Market, Inc., Bristol Farms, Inc., Ocean Beauty Seafoods, Inc., and various subsidiary stores owned and operated by these stores (collectively, defendants).

[2] All further unlabeled statutory references are to title 21 of the United States Code.

[3] The factual and procedural history is largely taken from the Court of Appeal's opinion.

[4] While astaxanthin and canthaxanthin can occur naturally, the color additives used for feeding farmed salmon are manufactured from petrochemicals. (See Burros, *Issues of Purity and Pollution Leave Farmed Salmon Looking Less Rosy,* N.Y. Times (May 28, 2003) p. F1.) Salmon farmers can manipulate the flesh color of their product by increasing or decreasing the amount of chemical dye. Indeed, one of the dye manufacturers "offers salmon farmers the SalmoFan, a sort of paint wheel with assorted shades of pink, to help them create the color they think their customers want." (*Ibid.*)

potential health risks of consuming the artificial coloring agents in particular and farm-raised salmon in general. They further allege that parallel federal and state laws require food labeling to state that farmed salmon is artificially colored and defendants failed to comply with those requirements. Plaintiffs also allege the failure to disclose the use of artificial coloring has caused consumers to believe farmed salmon is wild salmon.

The complaint asserts four state law causes of action: (1) violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.); (2) unfair or deceptive trade practices under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.); (3) violation of the false advertising law (Bus. & Prof. Code, § 17500 et seq.); and (4) negligent misrepresentation. The laws alleged to be violated as a predicate for the "unlawful" prong of plaintiffs' UCL claim (Bus. & Prof. Code, § 17200) include provisions of the state Sherman Food, Drug, and Cosmetic Law (Health & Saf. Code, § 109875 et seq.) (Sherman Law).[5]

Defendants jointly demurred on several grounds, including that (1) section 337(a)[6] preempts plaintiffs' state law claims; (2) further consideration of the complaint could conflict with regulation and enforcement by the United States Food and Drug Administration (FDA) or California's former Department of Health Services (DHS), so the action should be dismissed under the primary jurisdiction doctrine; and (3) plaintiffs failed to allege affirmative representation as required in order to state a cause of action under several provisions of the CLRA. Defendants also moved to strike portions of the complaint.

The trial court sustained the demurrer as to each count, with leave to amend. The court held that section 337(a) preempts plaintiffs' state law claims, that the dispute should be referred to the FDA or the DHS under the primary jurisdiction doctrine, and that plaintiffs failed to state a claim for violation of the CLRA because they failed to allege the necessary affirmative representation. Plaintiffs elected not to amend their complaint and instead challenged on appeal the sustaining of the demurrer.

---

[5] There is no dispute that, under California law, private parties may assert UCL claims based on violations of the Sherman Law. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 210–211 [197 Cal.Rptr. 783, 673 P.2d 660] (*Children's Television*).)

[6] Section 337(a) provides: "Except as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." Subsection (b) allows states to initiate proceedings in their own name in federal court to enforce, or restrain violations of, certain provisions of the FDCA after first giving 30 days' notice to the federal government and allowing the federal government to decide whether it wants to commence an enforcement action.

The Court of Appeal affirmed the trial court's finding of preemption, holding that section 337(a) precludes private enforcement of the FDCA, that plaintiffs' state law claims are predicated on a violation of the FDCA, and, therefore, that section 337(a) impliedly preempts plaintiffs' state law claims.[7] In light of its holding, the Court of Appeal did not reach or discuss the other grounds asserted by defendants in support of their demurrer. We granted plaintiffs' petition for review.

### B. *Relevant Federal and State Laws*

#### 1. *The FDCA Requires Disclosure of the Use of Color Additives*

■ The FDCA prohibits the misbranding of any food. (§ 331(b).) A food "shall be deemed to be misbranded" under the FDCA if "its labeling is false or misleading in any particular . . . ." (§ 343(a).) More important to this case, a food is also deemed misbranded if "it bears or contains any . . . artificial coloring . . . unless it bears labeling stating that fact . . . ." (§ 343(k).)

■ FDA regulations permit the use of the chemical substances astaxanthin and canthaxanthin in "the feed of salmonid fish" as color additives "to enhance the pink to orange-red color of the flesh of salmonid fish." (21 C.F.R. §§ 73.35(c) [astaxanthin], 73.75(c)(3) [canthaxanthin] (2007).) If used, however, the chemicals' presence must be declared as prescribed by the FDA (*id.*, §§ 73.35(d)(3), 73.75(d)(4)). Use of a color additive must be declared through the use of the phrases " 'Artificial Color,' 'Artificial Color Added,' or 'Color Added' (or by an equally informative term that makes clear that a color additive has been used in the food)." (*Id.*, § 101.22(k)(2) (2007).) Alternatively, disclosing the actual color additive used satisfies FDA regulations. (*Ibid.*) The disclosure that a color additive has been used "shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." (*Id.*, § 101.22(c).)

#### 2. *The FDCA Permits States to Establish Identical Requirements*

Congress amended the FDCA with the Nutrition Labeling and Education Act of 1990 (NLEA). (Pub.L. No. 101-535 (Nov. 8, 1990) 104 Stat. 2353.)

---

[7] The state Attorney General filed an amicus curiae brief addressing defendants' section 337 argument. The brief also directed the Court of Appeal's attention to section 343-1(a)(3) and argued that the statute expressly permits states to enact laws identical to federal requirements governing the labeling of artificially colored food. While the court's opinion acknowledged and addressed the Attorney General's section 337 arguments, it did not address the section 343-1 argument.

The purpose of the NLEA was to create uniform national standards regarding the labeling of food and to prevent states from adopting inconsistent requirements with respect to the labeling of nutrients. (Remarks of Rep. Waxman, 136 Cong. Rec. 5840 (daily ed. July 30, 1990) [debate on H.R. No. 3562, 101st Cong., 2d Sess.].) To that end, the NLEA included an explicit preemption provision in the form of section 343-1(a) (Pub.L. No. 101-535, § 6 (Nov. 8, 1990) 104 Stat. 2362-2364), which provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce— [¶] . . . [¶] (3) any requirement for the labeling of food of the type required by section . . . 343(k) of this title *that is not identical to the requirement* of such section . . . ." (§ 343-1(a), italics added.)[8]

██ Although section 343-1 speaks in terms of what states may *not* do, by negative implication, section 343-1 also expresses what states *may* do, i.e., states *may* establish their own requirements pertaining to the labeling of artificially colored food so long as their requirements are identical to those contained in the FDCA in section 343(k). (60 Fed.Reg. 57120 (Nov. 13, 1995) [under FDA regulations, "if the State requirement is identical to Federal law, there is no issue of preemption . . ."]; *Consumer Justice Center v. Olympian Labs, Inc.* (2002) 99 Cal.App.4th 1056, 1065 [121 Cal.Rptr.2d 749] (*Consumer Justice*) ["[s]tates *can* enforce labeling rules which *are* identical . . ." (original italics)]; cf. *Medtronic, Inc. v. Lohr* (1996) 518 U.S. 470, 495 [135 L.Ed.2d 700, 116 S.Ct. 2240] (*Medtronic*) [reaching same conclusion regarding similar FDCA preemption provision in § 360k].)

### 3. *The Sherman Law Imposes Requirements "Identical to" Those Contained in Section 343(k)*

██ Like the FDCA, the Sherman Law broadly prohibits the misbranding of food. (Health & Saf. Code, § 110765.) Among various examples of what constitutes misbranded food (e.g., *id.*, § 110660 et seq.), the Sherman Law uses language "identical to" section 343(k) to provide that food is misbranded "if it bears or contains any . . . artificial coloring . . . unless its labeling states that fact." (Health & Saf. Code, § 110740.) The Sherman Law provides that disclosing the addition of "color" will suffice (*id.*, § 110725, subd. (a)) and requires that any disclosure be "prominently placed . . . and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." (*Id.*, § 110705.)

---

[8] FDA regulations make clear that the phrase "not identical to" in section 343-1(a)(3) "does not refer to the specific words in the requirement." (21 C.F.R. § 100.1(c)(4) (2007).) "[I]f the State requirement does the same thing that the Federal law does, even if the words are not exactly the same, then it is effectively the same requirement as the Federal requirement. . . . [S]uch a State or local requirement is consistent with the Federal requirement." (60 Fed.Reg. 57120 (Nov. 13, 1995).)

■ Additionally, the Sherman Law incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the [FDCA]" as "the food labeling regulations of this state." (Health & Saf. Code, § 110100, subd. (a).) Thus, California has adopted as its own the FDA regulations regarding the use of (and disclosure of the use of) astaxanthin and canthaxanthin in the feeding of farmed salmon (see 21 C.F.R. §§ 73.35, 73.75 (2007)).

### 4. *Section 337 Specifies Who Has Standing to Enforce the FDCA*

■ Originally enacted in 1938, section 337 is a standing provision, providing that "[a]ll such proceedings for the enforcement, or to restrain violations, *of [the FDCA]* shall be by and in the name of the United States. . . ."[9] (Act of June 25, 1938, ch. 675, § 307, 52 Stat. 1046, italics added.) Section 337 precludes private enforcement of the FDCA (§ 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.* (2001) 531 U.S. 341, 349, fn. 4, 352 [148 L.Ed.2d 854, 121 S.Ct. 1012] (*Buckman*)) and limits the circumstances under which states may seek to enforce the FDCA in federal court (§ 337(b)). Whether or not section 337 also precludes private claims predicated on state law is the crux of the present litigation and will be discussed at greater length below.

### C. *Principles of Preemption*

■ As we have previously explained, "[t]he basic rules of preemption are not in dispute: Under the supremacy clause of the United States Constitution (art. VI, cl. 2), Congress has the power to preempt state law concerning matters that lie within the authority of Congress. [Citation.] In determining whether federal law preempts state law, a court's task is to discern congressional intent. [Citation.] Congress's express intent in this regard will be found when Congress explicitly states that it is preempting state authority. [Citation.] Congress's implied intent to preempt is found (i) when it is clear that Congress intended, by comprehensive legislation, to occupy the entire field of regulation, leaving no room for the states to supplement federal law [citation]; (ii) when compliance with both federal and state regulations is an impossibility [citation]; or (iii) when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citations.]" (*Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 955 [17 Cal.Rptr.3d 180, 95 P.3d 422] (*Bronco Wine*); see *Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929,

---

[9] The NLEA relabeled the original section 337 as section 337(a) (Pub.L. No. 101-535, § 4 (Nov. 8, 1990) 104 Stat. 2362) and added subsection (b). (§ 337(b); see *ante,* p. 1084, fn. 6.)

935–936 [63 Cal.Rptr.3d 50, 162 P.3d 569] (*Viva! International*).) It is well established that the party who asserts that a state law is preempted bears the burden of so demonstrating. (*Viva! International, supra,* 41 Cal.4th at p. 936; *Bronco Wine, supra,* 33 Cal.4th at p. 956.)

■ The interpretation of the federal law at issue here is further informed by a strong presumption against preemption. (See *Medtronic, supra,* 518 U.S. at p. 485; see also *Viva! International, supra,* 41 Cal.4th at p. 938; *Bronco Wine, supra,* 33 Cal.4th at p. 974.) "[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' [citation], we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' [Citations.]" (*Medtronic, supra,* 518 U.S. at p. 485; see *Bates v. Dow Agrosciences LLC* (2005) 544 U.S. 431, 449 [161 L.Ed.2d 687, 125 S.Ct. 1788] (*Bates*); *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1150, fn. 7 [45 Cal.Rptr.3d 21, 136 P.3d 821].) We apply this presumption to the *existence* as well as the *scope* of preemption. (*Medtronic, supra,* 518 U.S. at p. 485.)

There can be no doubt that the presumption applies with particular force here. (See *Bronco Wine, supra,* 33 Cal.4th at p. 974.) As the Court of Appeal acknowledged here, "[c]onsumer protection laws such as the [UCL], false advertising law, and CLRA, are within the states' historic police powers and therefore are subject to the presumption against preemption." Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers. (*Florida Avocado Growers v. Paul* (1963) 373 U.S. 132, 144 [10 L.Ed.2d 248, 83 S.Ct. 1210]; *Bronco Wine, supra,* 33 Cal.4th at pp. 959–961 [describing history of state regulation].) Indeed, as early as the 1860's, California was enacting laws regulating food marketing. (See, e.g., Stats. 1862, ch. 365, pp. 484–485 [prohibiting sale of adulterated and misbranded food]; *Bronco Wine, supra,* 33 Cal.4th at pp. 961–963.)

It is with these principles in mind that we consider whether it was the " 'clear and manifest purpose' " of Congress (*Medtronic, supra,* 518 U.S. at p. 485) to preclude states from providing private remedies for the violations of the state statutes at issue here.

## II.  DISCUSSION

We begin by noting the type of preemption defendants assert here.[10] As the Court of Appeal concluded, it is clear that Congress has not expressly preempted private claims predicated on *state laws* imposing requirements identical to those contained in the FDCA (see §§ 337, 343-1), and defendants do not claim otherwise. Neither do defendants contend that plaintiffs' action is impliedly preempted as a result of Congress occupying the field. Nor do defendants argue the action is preempted because compliance with both state and federal laws is impossible—as state and federal laws impose identical requirements regarding the disclosure of the use of artificial coloring, compliance with one necessarily ensures compliance with the other. (Compare, e.g., § 343(k) with Health & Saf. Code, § 110740.) Instead, defendants assert plaintiffs' claims are impliedly preempted because they stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

The Court of Appeal concluded that plaintiffs' action was indeed impliedly preempted, basing its holding solely on its reading and application of section 337(a). While the Court of Appeal acknowledged that the statute's plain language limits its scope to efforts that seek to enforce the FDCA itself, it nonetheless concluded that section 337(a) also operates to preempt plaintiffs' purely state law claims. The Court of Appeal reasoned that, because section 337(a) explicitly bars the private enforcement of FDCA provisions (*Buckman*, *supra*, 531 U.S. at pp. 349, fn. 4, 352), section 337(a) must therefore also impliedly bar private claims predicated on state provisions imposing requirements identical to those contained in the FDCA. However plausible the Court of Appeal's reasoning may appear when section 337(a) is considered in isolation, its reasoning is seriously undermined when section 343-1 is taken into account.[11] Accordingly, we begin with a discussion of that statute.

---

[10] We apply a de novo standard of review because this case was resolved on demurrer (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]) and because federal preemption presents a pure question of law (*Spielholz v. Superior Court* (2001) 86 Cal.App. 4th 1366, 1371 [104 Cal.Rptr.2d 197]).

[11] Defendants ask this court to ignore section 343-1 when considering Congress's intent, contending plaintiffs have not properly raised the statute and implying the Court of Appeal was not given an opportunity to consider the issue. We disagree and decline defendants' invitation to disregard section 343-1.

As previously mentioned (*ante*, at p. 1085, fn. 7), the Attorney General filed an amicus curiae brief in the lower court in which it discussed the impact of section 343-1 at length. Defendants filed an answer fully responding to the argument. After the Court of Appeal issued its opinion without discussing the statute, the Attorney General filed a letter in support of plaintiffs' petition for review in which it again addressed the provision. Defendants addressed the argument in their response letter. In neither their answer to the amicus curiae brief nor their response to the Attorney General's letter did defendants assert that section 343-1 had not been properly raised. Plaintiffs then discussed section 343-1 in their opening brief in

## A. *Section 343-1 Permits States to Adopt Identical Requirements*

The words of section 343-1 clearly and unmistakably evince Congress's intent to authorize states to establish laws that are "identical to" federal law. (§ 343-1; *Consumer Justice, supra,* 99 Cal.App.4th at p. 1065.) That is precisely what California did in enacting the Sherman Law. The Sherman Law provision prohibiting misbranding with regard to the use of color additives (Health & Saf. Code, § 110740) is identical to section 343(k), the parallel federal requirement specifically listed in section 343-1 as one of the federal statutes covered by the express preemption provision. Additionally, the Sherman Law incorporates all of the food labeling regulations promulgated by the FDA (Health & Saf. Code, § 110100, subd. (a)), including those having to do with the use of astaxanthin and canthaxanthin in the feeding of farmed salmon (21 C.F.R. §§ 73.35, 73.75 (2007)). Accordingly, the state requirements at issue here are explicitly permitted by section 343-1. (See *Consumer Justice, supra,* 99 Cal.App.4th at p. 1065 ["[s]tates *can* enforce labeling rules which *are* identical . . ." (original italics)].)

While Congress clearly stated its intent to allow states to establish their own identical laws, it said absolutely nothing about proscribing the range of available remedies states might choose to provide for the violation of those laws, such as private actions. Nor is there anything in the legislative history suggesting that any proponent of the legislation intended a sweeping preemption of private actions predicated on requirements contained in state laws. Defendants cite portions of the legislative history for that proposition, but the cited excerpts actually bolster our conclusion. For example, defendants point to the remarks of Representative Henry Waxman, who originally introduced the NLEA in the House of Representatives: "[The NLEA] recognizes the importance of the State role: by allowing *States* to adopt standards that are identical to the Federal standard, which may be enforced in State court; by allowing the *States* to enforce the Federal standard in Federal court." (Remarks of Rep. Waxman, 136 Cong. Rec. 1539 (daily ed. July 30, 1990) italics added.)

---

this court and defendants fully briefed the issue while simultaneously arguing plaintiffs should not be allowed to raise it. Accordingly, all the parties have had a reasonable opportunity to brief this issue and we may properly consider it. (Cal. Rules of Court, rule 8.516(b)(2).)

Additionally, while plaintiffs' petition for review did not explicitly cite section 343-1, it did broadly raise the issue of "whether the FDCA preempts parallel state law requirements." Because our central task in preemption analysis is to discern Congress's intent (*Bronco Wine, supra,* 33 Cal.4th at p. 955), it is appropriate to discuss a pertinent FDCA provision shedding light on that intent.

Moreover, the impact of section 343-1 presents a purely legal issue and does not require the further development of a factual record. We have previously allowed parties to " 'advance new theories on appeal when the issue posed is purely a question of law based on undisputed facts, and involves important questions of public policy.' " (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 6 [74 Cal.Rptr.2d 248, 954 P.2d 511].)

Far from establishing that Congress intended to preclude private claims based on state laws, Representative Waxman's remarks suggest the opposite. By explicitly stating that the NLEA would allow states to enforce the federal requirements in federal court, but not discussing who would be allowed to enforce the identical state requirements, the remarks suggest that Congress did not intend to alter the status quo, i.e., states may choose to permit their residents to file unfair competition or other claims based on the violation of state laws (see, e.g., *Children's Television, supra,* 35 Cal.3d at pp. 210–211).[12] If Congress intended to permit states to enact identical laws on the one hand, but preclude states from providing private remedies for violations of those laws on the other hand, "its failure even to hint at it is spectacularly odd." (*Medtronic, supra,* 518 U.S. at p. 491 (plur. opn. of Stevens, J.).) Congressional silence on this point is all the more strange in light of Congress's presumed awareness that "[v]irtually every state in the nation permits one or more nongovernmental parties to enforce state . . . laws of general applicability prohibiting deceptive or unfair acts and practices in the marketplace." (Annot., Right to Private Action Under State Consumer Protection Act—Preconditions to Action (2004) 117 A.L.R.5th 155.)[13]

■ Further undermining defendants' interpretation is the fact that Congress made clear that the preemptive scope of section 343-1 was to sweep no further than the plain language of the statute itself. In NLEA section 6(c)(1) (an uncodified provision), Congress provided that "[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [section 343-1] of the [FDCA]." (Pub.L. No. 101-535, § 6(c)(1) (Nov. 8, 1990) 104 Stat. 2364.) Thus, Congress's decision not to expressly supplant private claims based on those state laws authorized by section 343-1 should be interpreted as its considered decision to continue to allow states to provide such private remedies.

■ The language of this uncodified provision is significant for two additional reasons. First, it evidences an intent to allow state and federal regulation to coexist. "Where Congress establishes a regime of dual state-federal regulation, 'conflict-pre-emption analysis must be applied sensitively . . . so as to prevent the diminution of the role Congress reserved to the

---

[12] Indeed, the NLEA was enacted in 1990 primarily to establish a national uniform labeling standard in place of the patchwork of different state standards that existed at the time. Under defendants' interpretation of the FDCA, private claims based on those pre-NLEA state labeling laws would have been permitted (since they were presumably different from the FDCA), but Congress's adoption of a uniform standard in the form of the NLEA had the effect of eliminating private causes of action based on state labeling laws. It is hard to believe that Congress would have intended such a result without saying so.

[13] For example, we held in *Children's Television, supra,* 35 Cal.3d at pages 210 to 211, that, in California, "any unlawful business practice, *including violations of the Sherman law,* may be redressed by a [UCL] private action . . . ." (Italics added.)

States while at the same time preserving the federal role.' [Citations.]"[14] (*Viva! International*, *supra*, 41 Cal.4th at p. 942.) Defendants' interpretation would substantially interfere with state legal remedies, "producing a serious intrusion into state sovereignty while simultaneously wiping out the possibility of remedy for the [plaintiffs'] alleged injuries." (*Medtronic*, *supra*, 518 U.S. at pp. 488–489 (plur. opn. of Stevens, J.).)

■ Second, the provision's language is significant because it informs our analysis of the existence of any implied preemption. "[A]n express definition of the pre-emptive reach of a statute 'implies'—*i. e.*, supports a reasonable inference—that Congress did not intend to pre-empt other matters . . . ." (*Freightliner Corp. v. Myrick* (1995) 514 U.S. 280, 288 [131 L.Ed.2d 385, 115 S.Ct. 1483].) While an express clause does not foreclose an inquiry into implied conflict preemption in all cases (*Geier v. American Honda Motor Co.* (2000) 529 U.S. 861, 869 [146 L.Ed.2d 914, 120 S.Ct. 1913]), deference should be paid to Congress's detailed attempt to clearly define the scope of preemption under the FDCA. (See *Viva! International*, *supra*, 41 Cal.4th at p. 945 ["Congress has expressly identified the scope of the state law it intends to preempt; hence, we infer Congress intended to preempt no more than that absent sound contrary evidence."].)

Various provisions of the FDCA clearly demonstrate that "Congress knows how to write a preemption clause . . ." when it wants to (*Consumer Justice*, *supra*, 99 Cal.App.4th at p. 1059) and that "the [FDCA] evidences, far from implied preemption, an instance of implied *non*preemption . . ." (*id.* at p. 1063). Congress enacted numerous specific express preemption provisions in the FDCA. (See, e.g., §§ 360k [medical devices], 360ss [radiation emissions], 379r [nonprescription drugs], 379s [cosmetics].) The inference to be drawn from these provisions is that Congress, in light of the history of dual state-federal cooperation in this area, did not intend to limit states' options in a broad fashion. Indeed, the preemption provision at issue here, section 343-1, demonstrates Congress's care in deciding what to preempt and what to allow. Section 343-1 is notable both for the number of misbranding provisions it deals with (approximately 20) and for the detailed nature of its preemptive scope.[15] The language of section 343-1 and the NLEA's express preemption provision is further evidence that Congress chose carefully the manner with which it preempted certain state labeling laws. Defendants have

---

[14] Indeed, during debate on the NLEA, Congress recognized the important role states' laws have in consumer protection. "The States have played an invaluable role by enforcing State food labeling and advertising laws at a time when consumers have been bombarded with health claims." (H.R.Rep. No. 101-980, 2d Sess., p. 19 (Nov. 14, 1990); see remarks of Rep. Waxman, 136 Cong. Rec. 5840 (daily ed. July 30, 1990).)

[15] The statute, for example, does not apply to requirements governing maple syrup. (Gold, *Legal Strategies to Address the Misrepresentation of Vermont Maple Syrup* (2004) 59 Food & Drug L.J. 93, 103 & fn. 78.)

not provided sufficient evidence to contradict the inference that Congress intended a narrow interpretation of the scope of preemption.

In support of their argument that, notwithstanding section 343-1, plaintiffs' action is preempted by section 337, defendants point to NLEA section 6(c)(3) (an uncodified provision) (Pub.L. No. 101-535, § 6(c)(3) (Nov. 8, 1990) 104 Stat. 2364). That provision states that section 343-1 "shall not be construed to affect preemption, express or implied, of *any such requirement* of a State or political subdivision, which may arise under the Constitution, any provision of the [FDCA] not amended by section [343-1], or any Federal regulation, order, or other final agency action . . . ." (Pub.L. No. 101-535, § 6(c)(3) (Nov. 8, 1990) 104 Stat. 2364, italics added.)

This provision is inapplicable to this case for two reasons. First, the phrase "any such requirement" in NLEA section 6(c)(3) refers to the "requirement" discussed in NLEA section 6(c)(2) (Pub.L. No. 101-535, § 6(c)(2) (Nov. 8, 1990) 104 Stat. 2364). In NLEA section 6(c)(2), Congress provided that section 343-1 does not apply "to any requirement respecting a statement in the labeling of food that provides for a warning concerning the safety of the food . . . ." (Pub.L. No. 101-535, § 6(c)(2) (Nov. 8, 1990) 104 Stat. 2364.) Thus, read in context, it is clear that the phrase "any such requirement" in NLEA section 6(c)(3) refers to the food safety labeling requirement discussed in the immediately preceding provision, NLEA section 6(c)(2). Second, it is undisputed that section 337 bars private enforcement of the FDCA—no one contends section 343-1 alters that conclusion. However, plaintiffs do not seek to enforce the FDCA. Their action is based on the violation of *state law*—albeit state law that is, in compliance with section 343-1, identical to FDCA provisions. Concluding that section 343-1 permits private claims based on state law does not affect section 337's preemption of efforts to enforce the FDCA.

In *Medtronic, supra,* 518 U.S. 470, and *Bates, supra,* 544 U.S. 431, the high court considered the impact on assertions of federal preemption of provisions similar to section 343-1. In both cases the defendants claimed private suits to enforce state laws identical to federal laws were preempted by federal law. And, in both cases, the high court disagreed.

In *Medtronic, supra,* 518 U.S. 470, the plaintiffs filed a private state law negligence action against the manufacturer of an allegedly defective pacemaker. The defendants argued that the plaintiffs' action was preempted by the FDCA, as amended by the Medical Device Amendments of 1976 (MDA) (Pub.L. No. 94-295 (May 28, 1976) 90 Stat. 539). (*Medtronic, supra,* 518 U.S. at p. 474.) The high court, relying on a preemption provision contained in the MDA (§ 360k), disagreed and held that the action was not preempted.

Like section 343-1, section 360k provides, "no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—[¶] (1) which is different from, or in addition to, any requirement applicable under this chapter to the device . . . ." (§ 360k(a); see *Medtronic, supra,* 518 U.S. at pp. 481–482.) Interpreting this provision, the high court concluded that Congress did not intend to preempt "state rules that merely duplicate some or all of [the] federal requirements." (*Medtronic, supra,* at p. 492.) The high court further reasoned that because Congress authorized states to adopt identical requirements, states were also free to provide for private remedies for violations of those requirements. "[I]t is clear that the [plaintiffs'] allegations may include claims that Medtronic has, to the extent that they exist, violated FDA regulations. At least these claims, [the plaintiffs] suggest, can be maintained without being pre-empted by § 360k, and we agree. [¶] Nothing in § 360k denies [a state] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements." (*Medtronic, supra,* 518 U.S. at p. 495.)

In *Bates, supra,* 544 U.S. 431, the high court considered whether the plaintiffs' private state law action was preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) (7 U.S.C. § 136 et seq.). The plaintiffs there were Texas peanut farmers who alleged that their crops had been severely damaged by the application of the defendant's pesticide, which had been conditionally registered by the Environmental Protection Agency. (*Bates, supra,* 544 U.S. at p. 435.) The defendant argued FIFRA preempted the plaintiffs' action. (544 U.S. at p. 435.)

Like the provision at issue in *Medtronic,* FIFRA contains a preemption provision similar to section 343-1, which provides that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter" (7 U.S.C. § 136v(b); see *Bates, supra,* 544 U.S. at p. 436). The *Bates* court held that "[t]he imposition of state sanctions for violating state rules that merely duplicate federal requirements is equally consistent with the text of [7 U.S.C.] § 136v." (*Bates, supra,* 544 U.S. at p. 442.) Additionally, although FIFRA did not provide a federal remedy to the farmers, the high court concluded that "nothing in [7 U.S.C.] § 136v(b) precludes States from providing such a remedy." (*Bates, supra,* 544 U.S. at p. 448.)

Accordingly, in light of the plain statutory language of section 343-1, and the high court's construction of similar preemption language, we conclude that Congress intended to allow states to establish their own requirements so long as they are identical to those contained in section 343(k), which California has done in the form of the Sherman Law. We

further conclude that nothing in the text of section 343-1 or its legislative history supports the assertion that Congress intended to limit the scope of remedies states might choose to provide for the violations of those state laws. We therefore turn to a consideration of whether, notwithstanding section 343-1, section 337 provides a basis for the implied preemption of plaintiffs' claims.

### B. *Section 337 Does Not Impliedly Preempt Plaintiffs' State Claims*

To briefly recap, section 337 is the FDCA standing provision. Section 337(a) provides that, except as set forth in section 337(b), "all . . . proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." Section 337(b) allows states to initiate proceedings in their own name in federal court to enforce, or restrain violations of, certain provisions of the FDCA. However, before so doing, a state must give 30 days' notice to the federal government. (§ 337(b).) The federal government may then decide whether it wants to commence an enforcement action in court and, if it does, the state is precluded from acting to enforce the FDCA. (§ 337(b).)

The crux of defendants' preemption argument is that plaintiffs' private state claims are precluded because they improperly seek to enforce the FDCA in violation of section 337(a). Defendants' starting assumption is incorrect. Plaintiffs do not seek to enforce the FDCA; rather, their deceptive marketing claims are predicated on violations of obligations imposed by the Sherman Law, something that state law undisputedly allows (*Children's Television*, *supra*, 35 Cal.3d at pp. 210–211; cf. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 562–563 [71 Cal.Rptr.2d 731, 950 P.2d 1086]). That the Sherman Law imposes obligations identical to those imposed by the FDCA, as it must under section 343-1, does not substantively transform plaintiffs' action into one seeking to enforce federal law. Rather, it merely reflects Congress's considered judgment that states should uniformly regulate food labeling using identical standards. Indeed, while the high court in *Medtronic* did not expressly consider the impact of section 337 on the private state action at issue there, it held that those plaintiffs' private actions were permitted *because* they were identical to the FDCA. (*Medtronic, supra*, 518 U.S. at p. 495.) It is difficult to believe the high court would have so held if section 337 expressed a " 'clear and manifest' " intent (*Medtronic*, at p. 485) to preclude private actions based on state laws explicitly authorized by the FDCA in section 343-1.

Section 337 does not apply to the state law claims presented here. The statute, by its very terms, only implicates efforts to enforce *federal* law. What section 337 does *not* do is limit, prohibit, or affect private claims

predicated on *state* laws. (See *Consumer Justice, supra,* 99 Cal.App.4th at p. 1067, fn. 17 ["The underlying assumption [in the defendants' briefing] is that this lawsuit is somehow an attempt to use state unfair competition laws to enforce *federal* laws. No, the lawsuit is about state unfair advertising laws."].)[16] The FDA has opined that because "[section 337] applies only to proceedings to enforce the [FDCA]" (58 Fed.Reg. 2458 (Jan. 6, 1993)), "[n]othing in [section 337] would preclude a State from taking action against a particular food under *its own State law . . . .*"[17] (58 Fed.Reg. 2458, italics added.) Nor does section 337 affect the ability of states to provide a private remedy for violations of their laws if they so choose.[18] One treatise has noted that "[p]laintiffs may sue under state unfair trade practice laws for omissions that would fit under either FDA or state trade laws. [Fn. omitted.]" (2 O'Reilly, Food and Drug Administration (3d ed. 2007) § 26:32, p. 26-43; see *Children's Television, supra,* 35 Cal.3d at pp. 210–211.)

No court, particularly after passage of the NLEA, has ever held that states may not provide a private remedy for the violation of state laws imposing requirements identical to those imposed by federal law. The cases defendants cite are inapposite, all dealing with efforts to use state laws to directly enforce the FDCA itself. For example, defendants cite *Summit Tech. v. High-Line Med. Instruments Co.* (C.D.Cal. 1996) 933 F.Supp. 918. However, in that case, the district court allowed the plaintiff's UCL claim to proceed, acknowledging that "under [the UCL], Plaintiff may redress violations of the California Sherman Act . . . ." (*Summit Tech., supra,* 933 F.Supp. at p. 943.) Defendants rely heavily on a footnote in the decision stating, "This is true unless federal law preempts such an action. Thus, a Plaintiff may not bring a [UCL] claim that is, in fact, an attempt to state a claim under the federal FDCA." (*Summit*

---

[16] Defendants claim *Consumer Justice* is distinguishable. They reason that section 337 was not implicated in that case because the plaintiffs' false advertising claims there did not raise an issue "committed to the FDA," and could not "be properly characterized as an attempt to circumvent the [FDCA's] express prohibition on private causes of action . . ." (*Consumer Justice, supra,* 99 Cal.App.4th at p. 1064). However, the same is true of plaintiffs' state law claims here. Rather than raising issues "committed to the FDA," plaintiffs' claims arise under laws that section 343-1 explicitly authorizes states to enact.

[17] We note that, as the FDA is the federal agency that Congress has authorized to implement and enforce the FDCA (§ 371), the FDA is "uniquely qualified to determine whether a particular form of state law . . . should be pre-empted." (*Medtronic, supra,* 518 U.S. at p. 496; see *Thompson v. Western States Medical Center* (2002) 535 U.S. 357, 362 [152 L.Ed.2d 563, 122 S.Ct. 1497].)

[18] In their briefs, the parties discuss an unpublished federal district court opinion which came to the same conclusion when considering nearly identical facts. (*Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.* (D.Mass., Mar. 28, 2006, No. Civ. A. 03-11465) 2006 WL 839486 at p. *6, fn. 3.) Citing unpublished *federal* opinions does not violate our rules. (Cal. Rules of Court, rule 8.1115.) We find the court's reasoning persuasive.

*Tech.*, *supra*, 933 F.Supp. at p. 943, fn. 21.) However, as previously explained, plaintiffs' claims arise out of violations of the Sherman Law, not out of the FDCA itself.

The other cases cited by defendants are similarly unavailing. They invariably deal with a party seeking to enforce (sometimes through the use of state law) the FDCA. The cases are also notable for what they do not address—none involve state laws explicitly authorized by section 343-1 or a similar statute. For example, in *Pediamed Pharmaceuticals v. Breckenridge Pharm.* (D.Md. 2006) 419 F.Supp.2d 715, a pharmaceutical company sued its competitor over the marketing and sale of drugs. The defendant company asserted a state law unclean hands defense, arguing that the plaintiff's drugs were being marketed in violation of the FDCA. The district court rejected the defense, reasoning that, "[b]ecause [the defense] requires direct application of the FDCA, which only the FDA is entitled to enforce, these arguments are precluded." (*Pediamed Pharmaceuticals v. Breckenridge Pharm.*, *supra*, 419 F.Supp.2d at p. 727.)

Defendants cite *Fraker v. KFC Corp.* (S.D.Cal., Apr. 30, 2007, No. 06-CV-01284) 2007 WL 1296571 in their supplemental brief, arguing it is a recent example of a court reaching this issue. However, as with the previous cases, *Fraker* is inapplicable. The plaintiff in *Fraker* brought state law claims against KFC Corporation (formerly Kentucky Fried Chicken) alleging that the defendant misrepresented its product as healthy when it was in fact high in "trans" fat content. (*Id.*, at p. *1.) In dismissing the plaintiff's claims as preempted, the district court noted that the complaint alleged defendant violated the FDCA, misbranded its food in violation of federal regulations, and made actionable health claims in violation of federal regulations. (*Fraker v. KFC Corp.*, *supra*, 2007 WL 1296571 at p. *3.) Accordingly, the court concluded that the state law claims were impermissibly founded on violations of the FDCA and were thus preempted by section 337. (*Fraker v. KFC Corp.*, *supra*, 2007 WL 1296571 at pp. *3–*4.)

All of these cases rejected claims or defenses because they were based on violations of the FDCA itself.[19] The district courts reasoned that directly applying the FDCA, as would have been required, would run afoul of section 337. By contrast, plaintiffs' claims in this case do not require referring to, or applying, the FDCA. Plaintiffs' claims are based on violation of the Sherman Law and can be resolved with reference to state law alone. Additionally, none of these cited cases considered the impact of section 343-1. Given that section

---

[19] At oral argument, defendants' counsel cited *Bailey v. Johnson* (6th Cir. 1995) 48 F.3d 965. However, for the same reasons as discussed above, *Bailey* is unlike the case presented here. The plaintiffs in *Bailey* argued that "the FDCA created a private, federal right of action." (*Bailey v. Johnson*, *supra*, 48 F.3d at p. 966.) Plaintiffs here make no such claim.

343-1 explicitly authorizes the enactment of identical state labeling laws, that provision is an important distinction between the cases defendants cite and the one presented here. In short, defendants have not identified any case law to support their argument that Congress clearly and manifestly intended to impliedly preempt with section 337 what it explicitly authorized with section 343-1.

We note also that, as in *Medtronic*, the implication of defendants' "sweeping interpretation" would interfere greatly with state legal remedies, "producing a serious intrusion into state sovereignty . . . ." (*Medtronic, supra*, 518 U.S. at p. 488 (plur. opn. of Stevens, J.).) Defendants argue that the identical requirements contained in the Sherman Law may only be enforced by the state itself, and may not be the basis of private claims. However, if section 337(a)'s explicit preclusion of private enforcement of the FDCA impliedly preempts private claims based on identical state laws, as defendants argue, then it necessarily follows that section 337(b)'s explicit conditions on state enforcement of the FDCA in federal court must also impliedly limit states' enforcement of their own laws in state court. It cannot be the case that states must give the federal government 30 days' notice before seeking to enforce their own laws in state court (as § 337(b) requires when states seek to enforce the FDCA in federal court) and defendants do not argue otherwise.

Defendants assert that allowing private claims based on identical laws in state court would render section 337 meaningless because states would be required to give the FDA notice before initiating actions but private parties would not. This argument misunderstands the scope of section 337 and conflates efforts to enforce federal law with efforts based on state law. As previously discussed, section 337 is only concerned with enforcement of *federal law*, i.e., the FDCA. If a state brings an action to enforce the FDCA in federal court, it must first notify the FDA under section 337(b). On the other hand, defendants concede that states may enforce their own laws in state court without notifying the FDA at all, even though the laws impose requirements identical to those contained in the FDCA. Defendants identify no persuasive rationale to explain why private claims based on these same state laws would be of any greater concern to Congress than California's enforcement of state laws—in both instances, state laws identical to the FDCA are enforced without first notifying the FDA.

In conclusion, while allowing private remedies based on violations of state laws identical to the FDCA may arguably result in actions that the FDA itself might not have pursued, Congress appears to have made a conscious choice not to preclude such actions. Defendants' assertion that Congress intended, without so saying, to limit states' long-standing ability to allow private remedies for violations of their own laws has no support in

either statutory language, legislative history, or case law—and therefore defendants have not overcome the strong presumption against preemption applicable here, as is their burden (*Medtronic, supra,* 518 U.S. at p. 485; *Viva! International, supra,* 41 Cal.4th at p. 936). We accordingly hold that section 337 does not impliedly preempt private actions based on violations of state laws explicitly authorized by section 343-1.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed and the matter is remanded to that court for further proceedings consistent with this opinion.

Kennard, Acting C. J., Baxter, J., Werdegar, J., Chin, J., Corrigan, J., and Mihara, J.,[*] concurred.

---

[*]Associate Justice, Court of Appeal, Sixth Appellate District, assigned by the Acting Chief Justice pursuant to article VI, section 6 of the California Constitution.