Benjamin **PHELPS**, individually and on behalf of all others similarly situated, Plaintiff,

v.

**HORMEL FOODS CORPORATION,** Defendant.

**CASE NO. 16–CV–62411– DIMITROULEAS**

United States District Court, S.D. Florida.

Signed 03/24/2017

Entered 03/27/2017

Phillip Timothy Howard, Howard & Associates, Tallahassee, FL, for Plaintiff.

Allen Paige Pegg, Hogan Lovells LLP, Miami, FL, E. Desmond Hogan, Miranda L. Berge, Hogan Lovells US LLP, Washington, DC, for Defendant.

## ORDER GRANTING MOTION TO DISMISS

WILLIAM P. DIMITROULEAS, United States District Judge

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss Plaintiff's Class Action Complaint [DE 17] ("Motion"). The Court has carefully considered the Motion, Plaintiff's Response [DE 20], Defendant's Reply [DE 23], and the record in this case, and is otherwise advised in the premises. For the reasons stated herein, the Court will grant the Motion.

## I. BACKGROUND

In this action, Plaintiff Benjamin Phelps alleges that the "100% Natural" and "No Preservatives" claims on Defendant Hormel Foods Corporation's ("Hormel's") *Natural Choice* brand deli-style meat products ("Products") are false, misleading, and deceptive because they allegedly contain synthetic ingredients and/or preservatives. DE 1 ¶ 2. Specifically, Plaintiff contends that the Products contain cultured celery powder, baking powder, and genetically modified ingredients, including maltodextrin. *Id.* ¶¶ 2, 32, 33, 37. Plaintiff claims that he relied on the "100% Natural" label when he purchased four of the items in the Product line at a premium price. *Id.* ¶¶ 17–19, 23. Based on these allegations, Plaintiff asserts five counts: (1) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) negligent misrepresentation; (3) misleading advertising in violation of Fla. Stat. § 817.41; (4) breach of express warranty; and (5) unjust enrichment. *See id.* ¶¶ 98–143. Plaintiff seeks damages, as well as declaratory and injunctive relief, on behalf of himself and a putative class of all persons in Florida—or alternatively, all persons in the United States—who, within the past four years, "purchased Hormel products, labeled 'Hormel *Natural Choice.'*" *Id.* ¶¶ 83–84.

In response, Defendant has moved to dismiss the Complaint on several grounds. *See* DE 17. First, Defendant argues that Plaintiff's claims are preempted by federal

law because the challenged "100% Natural" and "No Preservatives" claims were specifically approved by the United States Department of Agriculture's ("USDA's") Food Safety Inspection Service ("FSIS") pursuant to the Federal Meat Inspection Act ("FMIA") and Poultry Products Inspection Act ("PPIA"). *Id.* at 7–12. Second, to the extent that Plaintiff's claims are not preempted, Defendant argues that they are precluded because USDA has primary jurisdiction. *Id.* at 12–14. Third, Defendant maintains that Plaintiff has failed to state a cognizable cause of action because FSIS's approval of the Products' labeling means that the labels are presumptively lawful and not false or misleading. *Id.* at 14–23. Finally, Defendant argues that Plaintiff lacks standing to sue for Products that he did not buy and to seek injunctive relief. *Id.* at 23–24.

## II. LEGAL STANDARD

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley,* 355 U.S. at 41, 78 S.Ct. 99). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

The Court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly,* 550 U.S. at 583, 588 n.8, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds, *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

## III. DISCUSSION

Although Defendant has asserted multiple bases for dismissal, the Court will focus its discussion on two independently sufficient grounds for dismissing the Complaint. First, Plaintiff's claims are expressly preempted by PPIA and FMIA. Second, Plaintiff's Compliant fails to state a claim upon which relief can be granted.

### A. Preemption

█ Plaintiff's challenges to the "100% Natural" and "No Preservatives" claims on the Product labels are expressly preempted because they fall within the preemption clauses of PPIA and FMIA and FSIS has preapproved the claims on the challenged Product labels. A court's preemption analysis is guided by two principles: (1) a presumption exists against supplanting the historic police powers of the states by federal legislation unless that is Congress's clear and manifest purpose; and (2) Congress's purpose must serve as the ultimate touchstone. *Meaunrit v. ConAgra Foods Inc.,* No. C 09-02220 CRB, 2010 WL 2867393, at *5 (N.D. Cal. July 20, 2010) (citations omitted).

■ Congress enacted PPIA and FMIA, in part, to ensure the proper labeling of poultry and meat products. *See* 21 U.S.C. §§ 451, 602. Under PPIA and FMIA, "meat and poultry products cannot be sold if the product has labeling that is false or misleading." *Kuenzig v. Kraft Foods, Inc.*, No. 8:11-CV-838-T-24 TGW, 2011 WL 4031141, at *4 (M.D. Fla. Sept. 12, 2011), *aff'd*, 505 Fed.Appx. 937 (11th Cir. 2013) (citing 21 U.S.C. §§ 457(c), 607(d); 9 C.F.R. §§ 317.8(a), 381.129(a)). These Acts delegate the regulation of meat and poultry products to USDA, which has promulgated extensive regulation governing the labeling and packaging of such products. *See* 9 C.F.R. §§ 300–500. Among these regulations is a requirement that manufacturers submit sketch labels to FSIS for approval before a final label bearing the terms "Natural" and "No Preservatives" may be used on any products distributed into the marketplace. 9 C.F.R. § 412.2. FSIS's approval process includes a determination of whether labels appear "false or misleading." *See* 21 U.S.C. § 457; *see also ConAgra*, 2010 WL 2867393, at *6.

■ Both PPIA and FMIA contain a preemption clause that states in relevant part: "Marking, labeling, packaging, or ingredient requirements ... in addition to, or different than, those made under this chapter may not be imposed by any State ...." 21 U.S.C. §§ 467e, 678. This clause sweeps broadly. *See Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459, 132 S.Ct. 965, 181 L.Ed.2d 950 (2012) (discussing FMIA preemption clause); *Ass'n des Eleveurs de Canards et D'Oies du Quebec v. Harris*, 79 F.Supp.3d 1136, 1144 (C.D. Cal. 2015) (discussing PPIA preemption clause). "For the

purposes of preemption, a 'requirement' is a rule of law that must be obeyed, whether it arises from common law principles enforceable in damages actions or in a statute." *ConAgra*, 2010 WL 2867393, at *5 (internal citations and quotation omitted). Thus, FSIS's preapproval of a label "must be given preemptive effect" over state-law claims that would effectively require the label to include different or additional markings. *Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL 5530017, at *5 (N.D. Cal. July 25, 2013) (citations omitted).

For example, in *Kuenzig*, the plaintiff brought claims under Florida law alleging that the "percent fat free" statements on the defendants' lunch meat products were "unfair, deceptive, and misleading." 2011 WL 4031141, at *1. The district court found that FSIS had preapproved the labels, and "[a]s such, any state law claim based on the contention that the labels are false or misleading [was] preempted, because such a claim would require Plaintiff to show that the information stated on the labels should have been presented *differently* (thus, imposing a *different and/or additional* labeling requirement than those found under the FMIA and the PPIA)." *Id.* at *6–7 (emphasis in original). The Eleventh Circuit affirmed *per curium* the dismissal on preemption (and other) grounds. 505 Fed.Appx. at 939.

■ Here, as in *Keunzig*, Plaintiff's claims are expressly preempted by PPIA and FMIA. FSIS has preapproved all of the labels at issue, each of which contains the challenged "100% Natural" and "No Preservatives" claims. *See* DE 17–1 to 17–18.[1] By attempting to challenge the FSIS-

---

1. The Court may consider the approved FSIS sketch labels attached to the Motion without converting the Motion into a motion for summary judgment because: (1) the documents

approved claims as false, misleading, or deceptive, each of Plaintiff's claims improperly seeks to impose additional or different requirements on Defendant's labeling than those required by USDA.[2] Such challenges are in direct conflict with the sweeping preemption clauses in PPIA and FMIA, and Plaintiff's state-law claims therefore must be dismissed as expressly preempted by federal law.

Plaintiff's arguments against federal preemption are unpersuasive. First, Plaintiff argues that the state's concurrent jurisdiction over the regulation of food labeling precludes a finding of preemption. Congress did provide that states may, consistent with PPIA and FMIA requirements, exercise concurrent jurisdiction with USDA to prevent the distribution of poultry and meat products that have labeling that is false or misleading. *See* 21 U.S.C. §§ 467e, 678. However, "[t]he states' concurrent jurisdiction has been interpreted to mean that states can impose sanctions for violations of state requirements that are *equivalent* to the FMIA and the PPIA's requirements." *Kuenzig*, 2011 WL 4031141, at *4 (emphasis added) (citations omitted). Plaintiff's claims do not seek to impose *equivalent* requirements, but rather additional or different requirements, which the Acts expressly forbid. Furthermore, Plaintiff's analogies to concurrent jurisdiction under the Organic Foods Production Act ("OFPA") and Federal Cigarette Labeling and Advertising Act ("FCLAA") are inapposite because those statutes' preemption provisions are far narrower than those in PPIA and FMIA. *See In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 793 (8th Cir. 2010) (noting that OFPA has "a limited preemption provision"); *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1191 (11th Cir. 2004) ("Congress' intent, based on the language in the preemption clause [of FCLAA], was to preempt some state law damages actions but not others.") (citing *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 520–24, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (plurality opinion)).

Second, Plaintiff's reliance on *In re Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1089–95, 72 Cal.Rptr.3d 112, 175 P.3d 1170 (2008), and other cases allowing plaintiffs to pursue state-law claims on alleged misbranding in violation of the Federal Food Drug and Cosmetics Act ("FDCA") also is unpersuasive. FDCA empowers FDA to regulate the labeling of food products that are not regulated by USDA. *See Kuenzig*, 2011 WL 4031141, at *5. Several courts have held that FDCA does not expressly preempt state-law claims challenging the use of the term "Natural" because FDA has refrained from defining the term and explicitly declined to regulate it. *See, e.g., Barnes*, 2013 WL 5530017, at *7 (collecting cases). In contrast, USDA has defined the term "Natural" and regulates it by requiring preapproval by FSIS before the term can be used on a product label in the marketplace. Thus, preemption issues arising under FDCA are distinguishable. *See id.* at

---

are central to Plaintiff's claims; and (2) their authenticity is not disputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

**2.** PPIA and FMIA do not preempt all FDUTPA claims alleging false or misleading *non-label* advertising. *See Kuenzig*, 2011 WL 4031141, at *10. However, the only advertising content to which Plaintiff objects in the Complaint is use of the terms "Natural" and "No Preservatives," which are claims approved by FSIS for use in describing the Products. Therefore, Plaintiff's FDUTPA claims based on advertising and marketing are preempted.

*5–7 (finding preemption of state-law claims contesting use of term "Natural" after FSIS preapproval but finding no preemption for use of term "Natural" in labeling of product subject to FDA regulation under FDCA).

Finally, Plaintiff mistakenly contends that Defendant's labels have not been evaluated for compliance with PPIA and FMIA because the USDA stamp of approval says "sketch approved subject to compliance with FMIA & PPIA & regulations." *See* DE 17–2 to 17–18. Use of the term "subject to compliance" in this context indicates that the establishment receiving preapproval still bears responsibility for applying final labels and producing products that conform to the sketch label and applicable regulations, including USDA marks of inspection. The stamp's "subject to compliance" statement does not change the fact that FSIS conducted a regulatory review process, which included an examination of whether the label's claims were false or misleading, and ultimately gave its approval.

## B. Failure to State a Claim

 Plaintiff's claims also must be dismissed for failure to state a claim. None of Plaintiff's claims state a cognizable cause of action because FSIS approved the challenged labels and Plaintiff does not allege that the Products failed to conform to those labels.[3] Each of the five counts in Plaintiff's Complaint—FDUTPA violation, negligent misrepresentation, misleading advertising, breach of express warranty, and unjust enrichment—requires a finding that the "100% Natural" and "No Preservatives" claims on the Product labels are false, deceptive, or misleading.[4] However, labels that have received FSIS preapproval "are presumptively lawful and not false or misleading." *Kuenzig*, 2011 WL 4031141, at *7 (citations omitted). "If the FSIS had determined that the labels were

---

3. Defendant raises other challenges specific to individual claims. The Court need not address all of these arguments, as the failure to make sufficient factual allegations to support a finding that the challenged labels are false, deceptive, or misleading requires the dismissal of all of Plaintiff's claims.

4. *See Hennegan Co. v. Arriola*, 855 F.Supp.2d 1354, 1360 (S.D. Fla. 2012) ("There are three elements for a FDUTPA claim for damages: 1.) a deceptive act or unfair practice; 2.) causation; and 3.) actual damages"); *In re Checkers Sec. Litig.*, 858 F.Supp. 1168, 1179 (M.D. Fla. 1994) ("The elements of negligent misrepresentation claim are: (1) a misrepresentation of a material fact; (2) knowledge by the representative as to the truth or falsity of the representation, or that the representation was made under circumstances in which he ought to have known of its falsity; (3) intent by the representator that the representation induces another to act on it; and (4) injury to the Plaintiff as a result of acting in justifiable reliance on the misrepresentation."); *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir.

1992) ("In order to prove a violation of Section 817.41, Florida law requires the plaintiff to prove reliance on the alleged misleading advertising, as well as each of the other elements of the common law tort of fraud in the inducement."); *Moss v. Walgreen Co.*, 765 F.Supp.2d 1363, 1368 (S.D. Fla. 2011) ("To plead a cause of action for breach of express warranties under the Florida Uniform Commercial Code, a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty."); *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) ("A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain [the benefit] without paying the value thereof.") (emphasis added and citations omitted).

false or misleading, Defendant['s] labels would not have been approved, and the FSIS would have prohibited Defendant[ ] from using the labels." *Id.* at *6.

Plaintiff's allegations in the Complaint do nothing to rebut the presumption that the labels are not false or misleading. Plaintiff does not claim, for example, that Defendant misrepresented the contents of the Products to FSIS, prepared final labels that did not comport with the approved sketch labels, or sold Products that did not conform to the preapproved labels. The ingredients in the Products were disclosed on the packaging and were submitted to FSIS in Defendant's request for sketch label approval. Contrary to the allegations in the Complaint, none of the labels indicate that the Products contain baking powder. And FSIS was aware that certain Products contained celery powder and maltodextrin and nevertheless found that the inclusion of these ingredients in the Products was consistent with the "100% Natural" and "No Preservatives" claims. Plaintiff therefore has failed to state a claim for any cause of action requiring a finding that the labels were false, deceptive, or misleading.

Additionally, Plaintiff's FDUTPA claims are subject to the Act's safe harbor provision. Pursuant to the safe harbor provision, there is no liability under FDUTPA when the challenged action is specifically permitted under federal law. *See* Fla. Stat. § 501.212(1). When FSIS reviews and approves product labels for commercial use, they are specifically permitted by federal law. *Kuenzig*, 505 Fed. Appx. at 939. Defendant cannot be liable under FDUTPA because the challenged labels were approved by FSIS and therefore fall within the safe harbor provision. This provision applies to FDUTPA claims

based on the labels themselves and advertisements featuring the approved labels. *Id.* (affirming district court holding that defendant could not violate FDUTPA by including pictures of its FSIS-approved labels in its advertising). Thus, to the extent that Plaintiff bases his FDUTPA claim on the marketing and advertising of the Products, those claims are foreclosed by the safe harbor provision because the Complaint does not challenge any aspect of the advertising distinct from the FSIS-approved labels.

## IV. CONCLUSION

In sum, Defendant has demonstrated that Plaintiff's claims are expressly preempted by PPIA and FMIA and that they fail to state cognizable claims. Because any amendment to the Complaint would be futile, the Court will dismiss the Complaint with prejudice. *See id.* (affirming dismissal of similar claims with prejudice). Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Class Action Complaint [DE 17] is **GRANTED.**

2. Plaintiff's Complaint [DE 1] is **DISMISSED with prejudice.**

3. The Clerk of Court is directed to **CLOSE** this case and **DENY as moot** all pending motions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 03/24/2017.