Filed 12/23/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHELLE QUESADA, | B239602 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC436557) |
| v. | |
| HERB THYME FARMS, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carl West, Judge. Affirmed.

Law Office of Raymond P. Boucher, Raymond P. Boucher; Whatley Kallas, Edith M. Kallas, Alan M. Mansfield; Kiesel + Larson, Helen Zukin, Maria L. Weitz; Johnson & Johnson and Neville Johnson for Plaintiff and Appellant.

Greenberg Traurig, Mark D. Kemple and Angela L. Diesch for Defendant and Respondent.

―――――――――――――

In this case of first impression, we address whether the federal Organic Foods Production Act of 1990 (OFPA or the Act) (7 U.S.C. § 6501 et seq.),[1] which governs the labeling of agricultural products as "organic" and "USDA Organic," preempts state consumer lawsuits alleging violations of the Act or violations of California's federally-approved state organic program (SOP), which is codified as the California Organic Products Act of 2003 (COPA) (Food & Agr. Code, § 46000 et seq.; Health & Saf. Code, § 110810 et seq.). Given this state-federal regulatory scheme, the resolution of this issue requires us to consider what, if any impact, *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077 has on our preemption analysis.

We conclude that in enacting the OFPA, Congress made clear its intention to preclude private enforcement through state consumer lawsuits in order to achieve its objective of establishing a national standard for the use of "organic" and "USDA Organic" in labeling agricultural products. Unlike *Farm Raised Salmon Cases*, *supra*, 42 Cal.4th 1077, where Congress did not intend to alter the status quo in which residents may choose to file unfair competition claims or other claims based on violations of identical state laws, in enacting the OFPA, Congress did intend to alter the status quo. Congress mandated federal approval and oversight of state organic programs to ensure consistent federal and state government enforcement for violations of the Act. COPA, California's federally-approved SOP, has a remedial scheme that does not include private enforcement. A state consumer lawsuit based on COPA violations, or violations of the OFPA, would frustrate the congressional purpose of exclusive federal and state government prosecution and erode the enforcement methods by which the Act was designed to create a national organic standard. Accordingly, this lawsuit poses a clear obstacle to the accomplishment of the congressional objectives in enacting the OFPA and so it is preempted. Therefore, we affirm the trial court's judgment dismissing this class

_____

[1]     All further undesignated statutory references are to title 7 of the United States Code.

and representative action filed by plaintiff Michelle Quesada against Herb Thyme Farms, Inc. (Herb Thyme).

FACTUAL AND PROCEDURAL BACKGROUND

Herb Thyme is a certified grower with federal approval to label its organically grown herbs as "USDA Organic." Herb Thyme allegedly mislabeled its product as "Fresh Organic" and used the "USDA Organic" graphic on its product packaging, when the contents contained a mix of organically grown herbs and conventionally grown herbs. Quesada alleges Herb Thyme "misrepresented the source, approval or certification of their non-organic fresh herb products," as "Fresh Organic" products.[2]

Quesada, on behalf of others similarly situated, filed a class and representative action against Herb Thyme. The second amended class action complaint (complaint) alleges causes of action for (1) unfair and deceptive trade practices in violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.); (2) violation of the false advertising law (Bus. & Prof. Code, § 17500 et seq.); (3) unlawful conduct in violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.); and (4) unfair and fraudulent conduct in violation of the UCL.[3] The laws alleged to be violated as a predicate for the "unlawful" prong of the UCL claim include provisions of the CLRA, and the false advertising law.[4] The complaint does not cite either the OFPA or COPA.

---

[2]    There is a dispute between the parties regarding Herb Thyme's certification as a split operation. Herb Thyme has requested judicial notice of the USDA's guidelines related to commingling and contamination prevention in organic production and handling. We deny that request because the issue is not relevant to the resolution of this appeal.

[3]    The court previously sustained a demurrer without leave to amend to the fifth cause of action for unjust enrichment.

[4]    The UCL proscribes any "unlawful business activity," which includes " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 112-113.)

3

Herb Thyme moved for judgment on the pleadings on two grounds – Quesada's claims are preempted by federal law, and the United States Department of Agriculture (USDA) has primary jurisdiction. Relying on the express language in various provisions of the OFPA, and a federal appellate case interpreting the OFPA, *Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig. v. Aurora Organic Dairy* (8th Cir. 2010) 621 F.3d 781 (*Aurora Dairy*), Herb Thyme argued the state consumer law claims alleging noncompliance with organic labeling laws were expressly preempted because these claims implicated the certification process under the OFPA. Herb Thyme also argued these state consumer law claims were impliedly preempted because a resolution of this action would conflict with regulation and enforcement of the OFPA by the federal government. The trial court agreed with Herb Thyme's preemption analysis, granted the motion, and entered judgment of dismissal. Quesada timely appeals.

During the course of the briefing on appeal, Quesada changed positions and now contends this action is based solely on violations of COPA. The reply brief states: "Ms. Quesada is not enforcing federal regulations; she brings state law claims for organic labeling violations in the State of California based on the State's organic labeling laws. Such labeling in California is regulated by the California SOP, not the NOP . . . ."[5] In asserting this new theory of liability, Quesada contends that *Farm Raised Salmon Cases*, *supra*, 42 Cal.4th 1077, is controlling as the California Supreme Court addressed federal preemption under a similar state-federal regulatory scheme.

After oral argument, this court requested the parties brief questions related to Quesada's new theory of liability, specifically, whether a state consumer lawsuit based upon violations of COPA is preempted. Although the trial court did not consider the

---

[5] This appears to be a proffered amendment to the complaint. On appeal from a judgment on the pleadings, we accept as true the allegations in the complaint. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515-516.) We independently determine whether the facts as alleged support a valid cause of action or, if they do not, whether amendment could cure the defect. (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1347.) "Where a complaint could reasonably be amended to allege a valid cause of action, we must reverse the judgment." (*Id.* at p. 1348.)

4

preemption question under COPA, we address the preemption issue under both the state and federal regulatory scheme because preemption is purely a legal issue, which we review de novo. (See *Farm Raised Salmon Cases*, *supra*, 42 Cal.4th at pp. 1089-1090, fn. 11.)

DISCUSSION

1. *Statutory Framework*

    a. *The OFPA and the National Organic Program (NOP)*

        (1). *Organic Labeling of Agricultural Products*

As noted, the OFPA establishes national standards for the sale and labeling of organically produced agricultural products, assures consumers that organically produced products meet consistent standards, and facilitates interstate commerce in organically grown fresh and processed food. (§ 6501; *Harvey v. Veneman* (1st Cir. 2005) 396 F.3d 28, 31-32.) "The Act furthers these purposes by establishing a national certification program for producers and handlers of organic products and by regulating the labeling of organic products. . . . §§ 6503(a), 6504, 6505(a)(1)(A)." (*Harvey v. Veneman*, *supra*, at p. 32; see also 7 C.F.R. §§ 205.1-205.681 (2012).) The USDA has promulgated regulations, known as the NOP, regulating which products can be labeled and sold as organic.

        (2). *The OFPA Permits States to Establish State Organic Certification Programs*

Congress expressly permits states to establish a state organic certification program.[6] (§ 6507; 7 C.F.R. § 205.620 (2012).) A state organic certification program

---

[6] The final rule establishing the NOP clarifies the distinction between the statutory term "state organic certification program" and "state organic program." (Final Rule, Department of Agriculture, Agricultural Marketing Service, National Organic Program, 65 Fed.Reg. 80548-01, 80617 (Dec. 21, 2000) (hereafter, Final Rule).) "[W]hile certification is one component of the requirements, it does not define the extent of evaluation of State programs that will be conducted by the NOP. SOP's [*sic*] can choose not to conduct certification activities under their existing organic program. State programs whose provisions fall within the scope of the eleven general provisions described in the Act (7 U.S.C. § 6506) will require Departmental review." (*Ibid.*)

5

must meet the requirements of the OFPA, be approved by the federal Secretary of Agriculture, and ensure products that are sold or labeled as "organic" are produced and handled using organic methods. (§ 6502(20).) After initial approval, the USDA has oversight of a state's organic certification program, which includes a mandatory review not less than once during each five-year period. (§ 6507(c); 7 C.F.R. § 205.622 (2012).)

(3). *Enforcement of the OFPA*

Congress did not create a private right of action to enforce the OFPA or its implementing regulations. (§ 6519; Final Rule, 65 Fed.Reg. 80627 (Dec. 21, 2000).)

Any agricultural producer or operation, whether certified or not, that knowingly sells or labels a product as organic, except in accordance with the Act, is subject to a civil penalty. (§ 6519(a); 7 C.F.R. § 205.100(c)(1) (2012).) Congress directed the USDA to establish an "expedited administrative appeals procedure" that allows a person to appeal any action taken under the federal program by the USDA, the applicable governing state official, or a certifying agent if that action "(1) adversely affects such person; or [¶] (2) is inconsistent with the organic certification program established under this chapter." (§ 6520(a); 7 C.F.R § 205.681 (2012).) The only judicial remedy is an appeal of a final agency decision to the United States District Court. (§ 6520(b).)

For certified operations, the USDA administratively enforces noncompliance, revocation, or suspension of certification. (7 C.F.R. §§ 205.662, 205.681 (2012).) The governing state official is responsible for administrative enforcement in states with SOPs. (7 C.F.R. § 205.620(d) (2012).) An SOP's governing state official must notify the federal Secretary of Agriculture upon commencement of any noncompliance proceeding against a certified operation. (7 C.F.R. § 205.668(a) (2012).) "In States with approved SOP's [*sic*], the SOP will oversee certification compliance proceedings and handle appeals from certified operations in the State. An SOP's appeal procedures and rules of procedure must be approved by the Secretary and must be equivalent to those of the NOP and USDA. The final decision on an appeal under the SOP may be appealed by the appellant to the United States District Court for the district in which the appellant is

located." (Final Rule, 65 Fed.Reg. 80634-80635 (Dec. 21, 2000); 7 C.F.R. § 205.668(b) (2012).)

b. *COPA*

As noted, COPA is California's federally-approved SOP, which is codified in both the Food and Agricultural Code (§§ 46000-46029), and in the Sherman Food, Drug & Cosmetic Law (Sherman Law) at Health and Safety Code sections 110810 through 110959. In enacting COPA, the Legislature adopted the federal regulations as the organic food and product regulations of this state. (Food & Agr. Code, § 46002, subd. (a); Health & Saf. Code, § 110956, subd. (a).)

Any person may file a complaint against an agricultural producer or operation whether certified or not, with the state Secretary of Food and Agriculture or the state Director of the Department of Health concerning noncompliance with COPA. (Food & Agr. Code, § 46016.1, subd. (a); Health & Saf. Code, § 110940, subd. (a).) In lieu of prosecution, civil penalties may be levied against any person who violates COPA or any regulation adopted by the NOP. (Food & Agr. Code, § 46017, subd. (a); Health & Saf. Code, § 110915, subd. (a).) COPA has a codified appeals procedure, entitling an aggrieved party to an administrative hearing and a limited judicial remedy. (Food & Agr. Code, § 46017, subds. (d), (e); Health & Saf. Code, § 110915, subds. (d), (e).)

For certified operations, the state Secretary of Food and Agriculture and the state Director of the Department of Health enforce noncompliance, revocation, or suspension of certification. (Food & Agr. Code, § 46016.1, subds. (b), (e); Health & Saf. Code, § 110940, subds. (b), (e); Final Rule, 65 Fed.Reg. 80624 (Dec. 21, 2000).) The process for handling complaints and appeals from the denial, suspension, or revocation of organic certification incorporates the federal regulations. (Cal. Code Regs., tit. 3, §§ 1391.3, 1391.5.) Final decisions may be appealed to the United States District Court for the district in which such certified operation is located. (Final Rule, 65 Fed.Reg. 80624 (Dec. 21, 2000).)

With this state-federal statutory framework in mind, we turn to the preemption question, that is, whether Quesada's state consumer lawsuit against a certified organic

7

grower based on mislabeling its product as "organic," in violation of the OFPA or COPA is preempted.

2. *General Preemption Principles*

The supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2) makes federal law paramount and vests Congress with the power to preempt state law. (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 935.) Federal regulations have the same preemptive effect as the statutes under which they are promulgated. (*Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, 137-138.) " 'Congress may exercise that power by enacting an express preemption provision, or courts may infer preemption under one or more of three implied preemption doctrines: conflict, obstacle, or field preemption.' [Citation.]" (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1048; see *Farm Raised Salmon Cases*, *supra*, 42 Cal.4th at p. 1087.) Herb Thyme asserts both express preemption and the implied preemption doctrine of obstacle preemption.

"[E]xpress preemption arises when Congress 'define[s] explicitly the extent to which its enactments pre-empt state law. [Citation.] Pre-emption fundamentally is a question of congressional intent, [citation], and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.' [Citations.]" (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, *supra*, 41 Cal.4th at p. 936.) In the first instance, we focus on the plain wording of the statute, which is the best evidence of congressional preemptive intent. (*W.M. Barr & Co., Inc. v. South Coast Air Quality Management Dist.* (2012) 207 Cal.App.4th 406, 423.)

Obstacle preemption arises when the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, *supra*, 41 Cal.4th at p. 936.) A state action constitutes a barrier to the accomplishment of a federal goal if the action interferes with the application of federal law. (See *Geier v. American Honda Motor Co.* (2000) 529 U.S. 861, 873.) Whether a state law is a sufficient obstacle is a matter of judgment, to be determined in the context of the federal

statute as a whole, its purposes, and its intended effects.  (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 815.)  If the federal act's operation would be "frustrated and its provisions refused their natural effect" by the operation of the state or local law, the state law must yield.  (*Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 760.)  Like express preemption, congressional intent determines whether obstacle preemption will be found in any given case.  (*Jankey v. Lee*, *supra*, 55 Cal.4th at p. 1048.)

There is a presumption against preemption of state laws that operate in traditional state domains.  (*Farm Raised Salmon Cases*, *supra*, 42 Cal.4th at p. 1088.)  The presumption applies with particular force here because " '[c]onsumer protection laws such as the [UCL], false advertising law, and CLRA, are within the states' historic police powers and therefore are subject to the presumption against preemption.' "  (*Ibid*.)  As the party asserting preemption, Herb Thyme has the burden of overcoming that presumption.  (See *Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, *supra*, 41 Cal.4th at p. 936.)

3.  *The OFPA Expressly Preempts State Organic Certification Laws, not State Consumer Lawsuits*

Herb Thyme has not met its burden to show Congress intended to expressly preempt state consumer lawsuits.  Section 6507 of the OFPA expressly preempts state organic certification laws.  States are expressly preempted from creating certification programs to certify organic farms or handling operations unless the state programs have been submitted to, and approved by the federal Secretary of Agriculture as meeting the requirements of the OFPA.  (§ 6507(a).)  Unless federally approved, a state organic certification program will not become effective.  (§ 6507(a), (b); Food & Agr. Code, § 46014.2, subd. (a) ["All products sold as organic in California shall be certified by a federally accredited certifying agent, if they are required to be certified under the federal act."]; Health & Saf. Code, § 110850, subd. (a) ["Following initial United States Department of Agriculture accreditation of certifying agents as provided in Section 6514 of Title 7 of the United States Code and upon implementation of the federal organic

9

certification requirement pursuant to the federal Organic Foods Production Act of 1990 . . . , all products sold as organic in California shall be certified by a federally accredited certifying agent, if they are required to be certified under the federal act."].) Thus, any state organic certification program that existed before passage of the OFPA or that has not been federally approved is expressly preempted. Congress, however, did not expressly preempt state consumer law claims alleging violations of the OFPA. (See *Aurora Dairy*, *supra*, 621 F.3d at p. 792.)

Congress's express preemption of state organic certification programs informs our analysis of the implied preemption doctrine of obstacle preemption. (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, *supra*, 41 Cal.4th at pp. 944-945.) "In *Freightliner Corp. v. Myrick* (1995) 514 U.S. 280 . . . , the court clarified the relation between express preemption clauses and implied preemption doctrines, explaining that 'an express definition of the pre-emptive reach of a statute "implies"— *i.e.,* supports a reasonable inference—that Congress did not intend to pre-empt other matters,' but the express clause does not 'entirely foreclose[ ] any possibility of implied pre-emption.' [Citations.] This inference is a simple corollary of ordinary statutory interpretation principles and in particular 'a variant of the familiar principle of *expressio unius est exclusio alterius:* Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.' [Citation.]" (*Ibid.*)

4. *The Implied Preemption Doctrine of Obstacle Preemption Bars State Consumer Lawsuits Based on Product Mislabeling in Violation of the OFPA*

Herb Thyme contends the preemption analysis in *Aurora Dairy*, *supra*, 621 F.3d 781, applies here and bars state consumer lawsuits against a certified grower for mislabeling its product as "USDA Organic." In *Aurora Dairy*, the Eighth Circuit concluded state consumer law claims against a certified milk producer for mislabeling non-organic milk as organic were impliedly preempted because the lawsuit conflicted with federal law establishing national organic labeling standards. (*Id.* at p. 796.) The Eighth Circuit reasoned that based upon the OFPA's purpose and structure, compliance

10

with the Act and certification, which permitted the dairy to label its product as "organic," were not separate requirements. Because the certified operations were authorized to label and sell organic products, state law claims challenging violations of the Act implicated federal certification and were not independently enforceable in a state consumer lawsuit. (*Ibid*.)

The *Aurora Dairy* court explained the purpose articulated in the OFPA, that is, " 'to establish national standards governing the marketing of certain agricultural products as organically produced products,' would be deeply undermined by the inevitable divergence in applicable state laws as numerous court systems adopt possibly conflicting interpretations of the same provisions of the OFPA and NOP." (*Aurora Dairy*, *supra*, 621 F.3d at p. 796.) Rather than achieving the congressional purpose to " 'assur[e] consumers that organically produced products meet a consistent standard,' " if permitted to proceed, state consumer lawsuits would have the opposite result, creating " 'consumer confusion and troubled interstate commerce.' " (*Id.* at pp. 796-797.) The court acknowledged that state lawsuits might assure consumers they are buying organic, an argument advanced by Quesada, but such assurances actually undermine Congress's purpose to establish national standards. (*Ibid.*)

The remedial scheme of the OFPA also supported the Eighth Circuit's conclusion that state consumer lawsuits alleging product mislabeling by a certified operation are preempted. (*Aurora Dairy*, *supra*, 621 F.3d at p. 797.) The OFPA permits an agricultural product to be sold by the certified grower as organic if the product is produced and handled in accordance with the Act. The penalty for noncompliance with the Act is a civil penalty. (*Ibid*.) Because the milk producer was federally certified to label its product as "organic," state consumer law claims alleging the products were mislabeled conflicted with this remedial scheme. We agree with the reasons articulated by the Eighth Circuit in *Aurora Dairy* that the purpose of the OFPA and the statutory remedial scheme demonstrate Congress's intent to preempt state consumer lawsuits. Thus, state consumer law claims against a certified organic producer seeking to hold it

11

accountable for representing its products as organic when in fact the products were not, are preempted.

Quesada attempts to distinguish *Aurora Dairy* by narrowly reading the case to apply only to certification challenges. *Aurora Dairy* holds state consumer law claims against a certified grower alleging mislabeling are preempted if these claims rely on proof of facts that, if found by the certification agent, would have precluded certification, or would have caused a revocation or suspension of certification. (*Aurora Dairy*, *supra*, 621 F.3d at pp. 798-799.)

Here, the state consumer law claims alleged in the complaint seek to hold Herb Thyme, a certified grower, accountable for mislabeling its product as organically grown. These claims require proof of facts that, if found by the certification agent, would have precluded federal certification or would have caused a revocation or suspension of certification. Under these circumstances, just as in *Aurora Dairy*, certification and compliance are inter-related. To hold otherwise might lead to the incongruous result in which a state court action might result in a finding that the certified grower mislabeled its product as "organic," but the certified grower's federal certification had not been revoked or suspended. Such a result would "come[] at the cost of the diminution of consistent standards . . . ." (*Aurora Dairy*, *supra*, 621 F.3d at pp. 796-797.)

Quesada notes that *Aurora Dairy* did not hold all state consumer claims are preempted. For example, the Eighth Circuit concluded state deceptive advertising claims alleging that " '[o]ur milk comes from healthy cows,' " " ' "Cows First," ' " or " 'We believe that animal welfare and cow comfort are the most important measures in organic dairy,' " were not preempted. (*Aurora Dairy*, *supra*, 621 F.3d at pp. 789-790, 799-800.) The facts necessary to support these causes of action had no bearing on whether the product met the national standard to be labeled as "organic." No similar allegations against Herb Thyme are present here. Accordingly, the trial court did not err in relying on *Aurora Dairy* to conclude the state consumer law claims alleged against Herb Thyme, a certified grower, based upon violations of the OFPA are preempted.

12

5. *The Implied Preemption Doctrine of Obstacle Preemption Bars State Consumer Lawsuits Based on Product Mislabeling in Violation of COPA*

If given leave to amend, Quesada contends no federal law would be implicated because this lawsuit would allege violations of the unfair competition law, the CLRA, and the false advertising law based on COPA. In support of this proposed amendment, Quesada shifts the focus from distinguishing the Eighth Circuit's preemption analysis in *Aurora Dairy* to the California Supreme Court's preemption analysis in *Farm Raised Salmon Cases*, *supra*, 42 Cal.4th 1077, which she contends supports her new position.

a. *Farm Raised Salmon Cases*

In *Farm Raised Salmon Cases*, *supra*, 42 Cal.4th 1077, the California Supreme Court considered and rejected the argument that because Congress expressly precluded private enforcement of the Federal Food, Drug and Cosmetic Act (FDCA) (21 U.S.C. § 337), the federal law also impliedly barred consumer lawsuits predicated on identical state laws. (*Farm Raised Salmon Cases*, *supra*, at p. 1086.) Congress amended the FDCA with the Nutritional Labeling and Education Act of 1990 (NLEA), which by negative implication permitted states to establish their own requirements pertaining to the labeling of artificially colored food so long as their requirements were identical to those contained in the FDCA. (*Ibid*.)

The court in *Farm Raised Salmon Cases* concluded that state consumer lawsuits alleging violations of the identical state laws were not preempted because there was no indication that Congress "intended a sweeping preemption of private actions predicated on requirements contained in state laws." (*Farm Raised Salmon Cases*, *supra*, 42 Cal.4th at p. 1090.) The legislative history further indicated the importance of the state role in enforcing the parallel state laws and there was no indication that Congress intended to alter the status quo, that is, "states may choose to permit their residents to file unfair competition or other claims based on the violation of state laws . . . ." (*Id*. at pp. 1090-1091.)

Congress passed an express savings clause in an uncodified provision of the NLEA, providing additional support that it did not intend to preclude private enforcement

13

of parallel and identical state laws.  (*Farm Raised Salmon Cases*, *supra*, 42 Cal.4th at p. 1091.)  "In NLEA section 6(c)(1) . . . , Congress provided that '[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [section 343-1] of the [FDCA].'  [Citation.]"  (*Ibid*.)  This language was significant because it "evidences an intent to allow state and federal regulation to coexist," and because it informed the court's analysis of "the existence of any implied preemption."  (*Id*. at pp. 1091-1092.)  Citing other specific express preemption provisions in the FDCA, the *Farm Raised Salmon Cases* court drew the inference that Congress, "in light of the history of dual state-federal cooperation in this area, did not intend to limit states' options in a broad fashion."  (*Id*. at p. 1092.)

        b.  *Farm Raised Salmon Cases is Unavailing to Quesada*

Just as the California Supreme Court did in *Farm Raised Salmon Cases*, our preemption analysis focuses on whether Congress intended to bar state consumer lawsuits predicated on violations of COPA, a federally-approved SOP.  We are mindful that because Congress established a dual state-federal regulatory regime, our preemption analysis must be " ' "applied sensitively . . . so as to prevent the diminution of the role Congress reserved to the States while at the same time preserving the federal role." [Citations.]' " (*Farm Raised Salmon Cases*, *supra*, 42 Cal.4th at p. 1091-1092, fn. omitted.)  The coordinated state-federal regulatory scheme, the legislative history, and Congressional intent in enacting the OFPA, readily distinguish the preemption analysis here from *Farm Raised Salmon Cases*.

Unlike the state-federal regulatory scheme in *Farm Raised Salmon Cases*, Congress permitted states to enact a state organic certification program if it met the requirements of the Act, and was *federally approved*.[7]  (§ 6507(a).)  Quesada ignores this

---

[7]  There are various levels of state involvement in the national organic program. States may choose to (1) seek approval of a state organic program and become accredited to certify operations; (2) establish an SOP and use private accredited certification agents; (3) become accredited to certify; (4) operate under the national organic program as implemented by the federal Secretary of Agriculture; or (5) not play an active role in the NOP.  (Exec. Order No. 13132, 65 Fed.Reg. 80682 (Dec. 21, 2000).)

14

distinction. COPA is California's federally-approved SOP. California, through COPA, effectively administers and enforces the federal Act within the state.[8] (§ 6507(b).) COPA conforms California law to the national organic program – it is not a state organic standard, it is the national organic program administered and enforced through state agencies. (See Assem. Com. on Agriculture, com. on Assem. Bill No. 2823 (2002 Reg. Sess.) Apr. 11, 2002, p. 1.) Because a state may or may not seek approval of an SOP, Congress did not intend to permit states with a federally-approved SOP to privately enforce the national organic standards, but bar private enforcement of the national organic standards in states without SOPs. This might lead to conflicting interpretations of the national organic standards in states with SOPs, which would affect interstate commerce and defeat Congress's purpose in establishing federal and state government oversight to ensure a national organic standard.

Moreover, unlike *Farm Raised Salmon Cases*, the legislative history of the OFPA reveals Congress intended enforcement responsibilities would be shared by the federal Secretary of Agriculture, the governing state officials in states with SOPs, and the certifying agents. (See Sen.Rep. No. 101-357, 2d Sess. (1990), reprinted in 1990 U.S. Code Cong. & Admin. News, p. 4958; see also § 6520(a).) This is in stark contrast to the quoted legislative history in *Farm Raised Salmon Cases* in which Congress envisioned private enforcement based on state laws identical to those contained in the FDCA.

Quesada contends, however, that COPA can be privately enforced under the Sherman Law. Health and Safety Code section 111910, codified as part of the Sherman Law, permits a party to bring an action in superior court to seek injunctive relief. Health and Safety Code section 111910 specifically references Health and Safety Code section 110810 et seq., which codifies COPA. Health and Safety Code section 111910 has not

---

[8] Quesada contends that because Congress permits states to enact more restrictive requirements in an SOP (§ 6507(b)), states may choose how to enforce those state laws. Congress, however, mandates federal approval of the additional requirements so as not to interfere with the purpose and intent of the OFPA in establishing national organic standards. (§ 6507(b)(2).)

15

been amended since the passage of COPA to conform California statutes to the national organic program.  " 'Where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified.' " (*Palermo v. Stockton Theaters, Inc.* (1948) 32 Cal.2d 53, 58-59.)  Moreover, private enforcement seeking injunctive relief is inconsistent with the NOP and other provisions of COPA.  (See Health & Saf. Code, § 110811 ["This article shall be interpreted in conjunction with Chapter 10 (commencing with Section 46000) of Division 17 of the Food and Agricultural Code and the regulations promulgated by the National Organic Program (NOP) (Section 6517 of the federal Organic Foods Production Act of 1990."].)  Citizens have no authority under the NOP to stop the sale of a product.  (Final Rule, 65 Fed.Reg. 80627 (Dec. 21, 2000).)  Thus, we conclude there is no private enforcement of COPA.

The mere absence of a private right of action, however, does not preclude an unfair competition claim based on a violation of the predicate statute.  (*Farm Raised Salmon Cases*, *supra*, 42 Cal.4th at p. 1091.)  In *Farm Raised Salmon Cases*, the court noted Congress's presumed awareness that " '[v]irtually every state in the nation permits one or more nongovernmental parties to enforce state . . . laws of general applicability prohibiting deceptive or unfair acts and practices in the marketplace.' [Citation.]" (*Ibid*.)  Any unlawful business practice, including violations of the Sherman Law, may be redressed in a UCL action.  (*Id.* at p. 1091, fn. 13.)

Here, a private right of action under the unfair competition law based on violations of COPA would conflict with the clear congressional intent to preclude private enforcement of the national organic standards.  Any such action would interfere with the exclusive federal and state government enforcement.  Limiting private enforcement furthers the congressional purpose and objective to nationalize organic labeling standards and to avoid the inevitable divergence of applicable state laws and enforcement strategies.  A state court, for example, might determine a certified organic grower did not comply with COPA (which has been federally approved and meets the requirements of

16

the OFPA) when there has been no revocation of the federal certification that permits the grower to label its products "organic." Likewise, injunctive relief is available for a UCL violation (Bus. & Prof. Code, § 17203), but under the NOP, which has been adopted as the regulations of this state, a private citizen cannot stop the sale of a product (Final Rule, 65 Fed.Reg. 80627 (Dec. 21, 2000)). These examples show that state consumer lawsuits even in states with a federally-approved SOP would undermine Congress's purpose of establishing national standards governing the marketing of certain agricultural products as "organic."

If Quesada were given leave to amend, she would base her state consumer law claims on allegations that Herb Thyme, a certified grower, mislabeled its herbs as "organic." To recover under any theory, Quesada would necessarily have to prove facts that Herb Thyme did not comply with the national organic labeling standards, which are codified in COPA as the standards of this state (Food & Agr. Code, § 46002, subd. (a); Health & Saf. Code, § 110956, subd. (a)). As *Aurora Dairy* notes, compliance and certification are inter-related. Quesada's proposed state consumer law claims based on violations of COPA require proof of facts, which if found by the certification agent, would have precluded federal certification, or would have led to revocation or suspension of Herb Thyme's certification. Such claims are impliedly preempted because state consumer lawsuits based on violations of COPA stand as an obstacle to the accomplishment and execution of the Congress's purpose and objective to establish national standards for organic production and labeling of agricultural products.

As Quesada points out, *Jones v. ConAgra Foods, Inc.* (N.D.Cal. 2012) 912 F.Supp.2d 889, reached the opposite conclusion. We are not bound by federal district court decisions. (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1074.) We also reject *Jones v. ConAgra Foods, Inc.* on its merits. In *Jones v. ConAgra Foods, Inc.*, the court concluded the implied preemption doctrine of conflict preemption did not bar the action because COPA does not impose any relevant additional requirements than those under the OFPA. (*Jones v. ConAgra Foods, Inc.*, *supra*, at pp. 895-896.) In reaching this conclusion, the *Jones* court did not discuss

17

federal approval and oversight of the state organic program or the federally approved remedial scheme in COPA that limits private enforcement to ensure national organic labeling standards.

In sum, we conclude that Quesada's state consumer lawsuit is preempted by Congress's mandate precluding private enforcement of the national organic standards to ensure national consistency in the production and labeling of agricultural products as "organic." Accordingly, we do not reach or consider the primary jurisdiction doctrine as an alternative ground to affirm the judgment.

DISPOSITION

The judgment is affirmed. Herb Thyme's request for judicial notice is denied, and its request for judicial notice in support of its supplemental briefing is granted only as to Exhibits E-G. Quesada's request for judicial notice is granted only as to Exhibits 7-10. Each party to bear its own costs on appeal.

**CERTIFIED FOR PUBLICATION**

ALDRICH, J.

We concur:

CROSKEY, Acting P. J.

KITCHING, J.