Filed 8/29/14  Marin General Services Authority v. Novato Taxi CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARIN GENERAL SERVICES AUTHORITY et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> NOVATO TAXI et al., <br><br> Defendants and Appellants. | A139070 <br><br> (Marin County <br> Super. Ct. No. CIV 1001653) |

State law requires local government to regulate privately operated taxicab companies to protect public safety.  (Gov. Code, § 53075.5.)[1]  State law also requires that such regulations include a mandatory controlled substance and alcohol testing certification program.  (§ 53075.5, subd. (b)(3)(A).)  In Marin County, regulation and permitting of taxicabs is conducted by the Marin General Services Authority (MGSA), a joint powers authority (§ 6500 et seq.), which administers a variety of county-wide programs.  MGSA regulations require taxicab companies to report the results of employees' drug and alcohol screening tests as a condition of permitting.

Novato Taxi and its owner, Dan Carlson (collectively appellants), refused to complete permit applications, maintaining that the reporting requirement conflicted with, and was preempted by, section 53075.5, subdivision (b)(3)(A)(iv).  MGSA and the City of Novato (collectively respondents) filed an action in Marin County Superior Court

---

[1] Undesignated statutory references are to the Government Code.

1

seeking to enjoin appellants from operating a taxicab company without the necessary permits, and to impose fines and penalties. After a bench trial, the trial court issued an order permanently enjoining appellants from operating a taxicab business without the required permits. Appellants argue that the trial court misconstrued section 53075.5 and abused its discretion by excluding expert testimony. We affirm.

## I.    REGULATORY FRAMEWORK

The California Constitution provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) "The regulation of the taxicab industry is a traditional subject of the police power of cities and counties. [Citations.]" (*Cotta v. City and County of San Francisco* (2007) 157 Cal.App.4th 1550, 1560; see also Veh. Code, § 21100, subd. (b) ["[l]ocal authorities may adopt rules and regulations by ordinance or resolution" regarding "[l]icensing and regulating the operation of vehicles for hire and drivers of passenger vehicles for hire"].) "California courts have consistently held that taxicab drivers do not obtain any vested right in the grant of permission to operate taxicabs on the public roadways. Rather, that permission may be altered at the discretion of the issuing authority." (*Cotta,* at p. 1560.)

The Legislature of the State of California has specifically determined that local governments must regulate privately operated taxicab companies to protect public safety. (§ 53075.5, as amended by Stats. 1995, ch. 405, § 1, p. 2359; Stats. 1986, ch. 248, § 87, p. 1242 [renumbering and amending former § 53075]; Stats. 1983, ch. 1260, §§ 1–2, p. 4999 [enacting former § 53075].) Section 53075.5 provides in relevant part:

"(a) Notwithstanding Chapter 8 (commencing with Section 5351) of Division 2 of the Public Utilities Code, every city or county shall protect the public health, safety, and welfare by adopting an ordinance or resolution in regard to taxicab transportation service rendered in vehicles designed for carrying not more than eight persons, excluding the driver, which is operated within the jurisdiction of the city or county.

"(b) Each city or county shall provide for, *but is not limited to providing for*, the following: [¶] . . . [¶]

2

"(3)(A) A mandatory controlled substance and alcohol testing certification program. *The program shall include, but need not be limited to*, all of the following requirements:

"(i) Drivers shall test negative for each of the controlled substances specified in Part 40 (commencing with Section 40.1) of Title 49 of the Code of Federal Regulations,[2] before employment. Drivers shall test negative for these controlled substances and for alcohol as a condition of permit renewal or, if no periodic permit renewals are required, at such other times as the city or county shall designate. As used in this section, a negative test for alcohol means an alcohol screening test showing a breath alcohol concentration of less than 0.02 percent.

"(ii) Procedures shall be substantially as in [federal regulation 40.1 et seq.], except that the driver shall show a valid California driver's license at the time and place of testing, and except as provided otherwise in this section. Requirements for rehabilitation and for return-to-duty and follow-up testing and other requirements, except as provided otherwise in this section, shall be substantially as in [federal regulation 382.101 et seq.].

"(iii) A test in one jurisdiction shall be accepted as meeting the same requirement in any other jurisdiction. Any negative test result shall be accepted for one year as meeting a requirement for periodic permit renewal testing or any other periodic testing in that jurisdiction or any other jurisdiction, if the driver has not tested positive subsequent to a negative result. However, an earlier negative result shall not be accepted as meeting the pre-employment testing requirement for any subsequent employment, or any testing requirements under the program other than periodic testing.

"(iv) *In the case of a self-employed independent driver, the test results shall be reported directly to the city or county, which shall notify the taxicab leasing company of record, if any, of positive results. In all other cases, the results shall be reported directly*

---

2 Subsequent references to "federal regulations" are to the parts in title 49 of the Code of Federal Regulations.

3

*to the employing transportation operator, who may be required to notify the city or county of positive results.*

"(v) All test results are confidential and shall not be released without the consent of the driver, except as authorized or required by law.

"(vi) Self-employed independent drivers shall be responsible for compliance with, and shall pay all costs of, this program with regard to themselves. Employing transportation operators shall be responsible for compliance with, and shall pay all costs of, this program with respect to their employees and potential employees, except that an operator may require employees who test positive to pay the costs of rehabilitation and of return-to-duty and followup testing.

"(vii) Upon the request of a driver applying for a permit, the city or county shall give the driver a list of the consortia certified pursuant to [federal regulation 382.101 et seq.] of that the city or county knows offer tests in or near the jurisdiction.

"(B) No evidence derived from a positive test result pursuant to the program shall be admissible in a criminal prosecution concerning unlawful possession, sale or distribution of controlled substances.

"(c) Each city or county may levy service charges, fees, or assessments in an amount sufficient to pay for the costs of carrying out an ordinance or resolution adopted in regard to taxicab transportation services pursuant to this section.

"(d) *Nothing in this section prohibits a city or county from adopting additional requirements for a taxicab to operate in its jurisdiction.*

"(e) For purposes of this section, 'employment' includes self-employment as an independent driver." (Italics added.)

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

The City of Novato has delegated primary responsibility for taxicab regulation to MGSA, but retained its traditional police power authority over enforcement of its ordinances. In 2006, MGSA passed the Marin General Services Authority Taxi Regulation Program (MGSA Taxicab Regulations), which is the subject of this litigation. The MGSA Taxicab Regulations require company, driver, and vehicle permits for taxicabs operating within Marin County.

Under the MGSA Taxicab Regulations, "[n]o [c]ompany shall operate or permit a Taxicab owned or controlled by it to be operated as a vehicle for hire . . . without having first obtained a Company Permit from the MGSA." One of the requirements for a company permit is "[s]ubmission of a copy of the Company's drug and alcohol policy which must include at a minimum that employment or an offer of employment for any Driver is conditioned upon an acceptable drug and alcohol test meeting the requirements of these regulations and of . . . Section 53075.5 . . . ." In order to obtain a permit, a driver is required to provide "[e]vidence of compliance with the mandatory controlled substance and alcohol testing certification program, as set forth below: [¶] i. Drivers shall show proof from a drug testing company approved by the Executive Officer that the Driver tested negative for each of the controlled substances specified in [federal regulation 40.1 et seq.], before employment. Drivers must also test negative for alcohol. Drivers must show proof of negative tests for these controlled substances and for alcohol as a condition of Permit issuance or renewal. Drivers may be also be [*sic*] subject to random drug and/or alcohol testing during the term of his/her Permit. . . . *All test results shall be reported to the* [*MGSA*] *Executive Officer* or his/her designee; and [¶] . . . [¶] iv. *In the case of either a Company employee or a self-employed independent Driver, the test*

---

[3] Appellants, in their appellate briefs, often fail to support their factual assertions with citations to the appellate record. We do not consider such factual assertions. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [appellate court may treat as waived any factual contentions not supported by a citation to the record].)

*results shall be reported directly to the Company and the* [*MGSA*] *Executive Officer*, who shall notify the taxicab leasing company of record, if any, of positive results."[4]  (Italics added.)

Unlike other taxicab companies in Marin County, Novato Taxi's drivers, other than Carlson and his wife, are employees and not independent contractors.  In April 2008, Novato Taxi and its employees began the process of applying for permits under the MGSA Taxicab Regulations.  The applications were not completed because Carlson refused to sign a release allowing MGSA to directly receive the results of all employee drug tests.[5]  Carlson maintained that, pursuant to section 53075.5, subdivision (b)(3)(A)(iv), an independent driver's test results must all be reported to MGSA, but only an employee's *positive* test results can be reported outside the company.

In December 2009, MGSA's executive officer issued a compliance order, which demanded that Novato Taxi comply with the MGSA Taxicab Regulations or face the threat of judicial enforcement.  MGSA also notified appellants that it intended to seek termination of Novato Taxi's telephone service, pursuant to section 53075.8.  Appellants filed a protest and requested a hearing.

On February 9, 2010, the MGSA Board held a hearing at which appellants, represented by counsel, argued that the MGSA Taxicab Regulations violated section 53075.5, as well as federal regulations upon which section 53075.5 was modeled.  MGSA took the position that its regulations did not conflict with section 53075.5 because it was merely imposing "additional requirements for a taxicab to operate in its jurisdiction."  (§ 53075.5, subd. (d).)  MGSA also argued that its regulations did not conflict with the federal regulations.  It relied on federal regulation 40.331(e), which provides:  "If requested by a Federal, state or local safety agency with regulatory

---

[4] The italicized language was added to the regulations after Carlson first refused to agree to report employees' negative test results.

[5] The form authorizes release of test results to "Marin County Drug Program Coordinator Jeff Rawles" and "[t]he Back Up Anti-Drug Program coordinator for the company [an applicant drives] for."

authority over you or the employee, you must provide drug and alcohol test records concerning the employee."

The MGSA Board rejected appellants' preemption argument. Thereafter, respondents filed an action in Marin County Superior Court requesting that the court issue preliminary and permanent injunctions restraining appellants from operating a taxicab company without the necessary permits. Respondents also sought a fine and an order terminating Novato Taxi's telephone service.

On June 17, 2010, the Honorable James R. Ritchie issued an order granting a preliminary injunction. Appellants moved, pursuant to Code of Civil Procedure section 533, to dissolve the preliminary injunction. Judge Ritchie denied the motion. We dismissed, as untimely, appellants' appeal from the trial court's order denying the motion. (*Marin General Services Authority v. Novato Taxi* (Apr. 17, 2012, No. A130764) [nonpub. opn.].) Thereafter, appellants submitted the results of the drug and alcohol tests, obtained the necessary permits from MGSA, but reserved their rights to "argu[e] any issue whatsoever in the pending case . . . ."

The case proceeded to a bench trial before the Honorable Faye D'Opal. At trial the facts were undisputed, but appellants continued to maintain that the requirement that all employee drug test results be reported directly to MGSA conflicted with, and was preempted by, section 53075.5, subdivision (b)(3)(A)(iv). Appellants presented legislative history materials, as well as the testimony of Carolina Rose, an attorney, who opined that "local government was [not] given discretionary authority to require that all test results of employees be reported directly to local government." Respondents objected to Rose's testimony as inadmissible legal opinion.

Initially, Judge D'Opal allowed Rose's testimony, but later reconsidered the evidentiary ruling and sustained respondents' objections. The trial court also entered judgment for respondents, issued a permanent injunction compelling appellants to comply with the MGSA Taxicab Regulations prior to operating any taxi, and ordered appellants to pay a fine of $5,000. The court's statement of decision provides: "Nothing in [the] legislative history [of section 53075.5] bars any City or County from *also*

7

requiring the drug test results for employee drivers to be submitted directly to them. [¶] The legislative purpose in adopting the statutory language was not to *force* these agencies to incur unwanted expense, oversight duties or liability in administering the drug testing program. If the Cities and Counties *voluntarily* decided it was in the interest of public safety to take a more active role in ensuring the sobriety of taxicab drivers, and to require the testing labs to also send *all* drug tests (for both independent and employee drivers) directly to them, there is nothing in the statute or in the legislative history to indicate that they should be prevented from adopting the additional regulation at issue here." (Some italics omitted.) Appellants filed a timely notice of appeal from the judgment.

### III. DISCUSSION

In their briefs, appellants do not argue that the MGSA Taxicab Regulations violate the Fourth Amendment or Novato Taxi employees' right of privacy under article I, section 1, of the California Constitution.[6] Instead, appellants contend that the trial court erred by failing to conclude that the challenged ordinance is preempted by section 53075.5. Appellants also maintain that the trial court abused its discretion by excluding Rose's expert testimony. Neither argument has merit.

A. *Preemption*

Appellants argue that the plain language of section 53075.5, and its legislative history, suggests that the Legislature sought to prohibit local government from requiring direct government reporting of all drug test results. They urge, "By permitting the MGSA and the City to enact an ordinance that requires the very conduct that the plain language of the statute precludes, and which the legislature had considered and rejected

---

[6] At oral argument, appellants attempted to raise new arguments, which we will not address. (See *People v. Thompson* (2010) 49 Cal.4th 79, 110, fn. 13 [an argument not made in briefs is forfeited and cannot properly be raised at oral argument]; *Sunset Drive Corp. v. City of Redlands* (1999) 73 Cal.App.4th 215, 226 ["[a]bsent a sufficient showing of justification for the failure to raise an issue in a timely fashion, we need not consider any issue which, although raised at oral argument, was not adequately raised in the briefs"].)

8

in enacting the law, the trial court interpreted the statute in a manner that renders . . . section 53075.5(b)(3)(A)(iv) superfluous." Respondents, on the other hand, argue the challenged regulation is authorized by section 53075.5, subdivisions (b)(3)(A) and (d).

We review questions of statutory interpretation and preemption de novo. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10; *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.* (2001) 90 Cal.App.4th 64, 69; *Bank of America v. Giant Inland Empire R.V. Center, Inc.* (2000) 78 Cal.App.4th 1267, 1276.) " '[T]he construction of statutes and the ascertainment of legislative intent are purely questions of law. This court is not limited by the interpretation of the statute made by the trial court . . . .' [Citation.] Nor are we limited to the evidence presented on the question in the trial court. [Citation.]" (*Bravo Vending v. City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 391–392.)

"The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption. [Citation.]" (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149.) "[I]n view of the long tradition of local regulation and the legislatively imposed duty to preserve and protect the public health, preemption may not be lightly found. [¶] 'Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject were otherwise one properly characterized as a "municipal affair." [Citations.]' [Citation.] [¶] . . . [¶] Preemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local regulations. Similarly, it should not be found when the statutory scheme recognizes local regulations." (*People ex rel. Deukmejian v. County of Mendocino* (1984) 36 Cal.3d 476, 484–485.)

Preemption analysis "consists of four questions, which in order of increasing difficulty may be listed as follows: (1) Does the ordinance duplicate any state law? (2) Does the ordinance contradict any state law? (3) Does the ordinance enter into a field

of regulation which the state has expressly reserved to itself? (4) Does the ordinance enter into a field of regulation from which the state has implicitly excluded all other regulatory authority? [Citations.]" (*Bravo Vending v. City of Rancho Mirage, supra,* 16 Cal.App.4th at p. 397.) Section 53075.5 expressly makes clear that further local regulation was expected. Thus, appellants apparently concede that the challenged regulation does not duplicate state law or enter into a field expressly or implicitly reserved to the state. Instead, they focus only on the second test. They contend: "[T]he MGSA ordinance clearly contradicts the Government Code because it directs that drug test results[, which section 53075.5] commands be delivered only to an employer[,] also be delivered to [MGSA's] designated officer." The MGSA Taxicab Regulations unquestionably require direct reporting of an employee's test results, including negative results, to local government. However, the parties disagree regarding whether that requirement conflicts with section 53075.5. We must construe the statute.

"The relevant principles that guide our decision are well known. ' "Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] To ascertain such intent, courts turn first to the words of the statute itself [citation], and seek to give the words employed by the Legislature their usual and ordinary meaning. [Citation.] When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted. (Code Civ. Proc., § 1858.) The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment. [Citation.]" ' [Ciations.] [¶] We also must endeavor to harmonize, both internally and with each other, separate statutory provisions relating to the same subject. [Citation.]" (*Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist., supra,* 90 Cal.App.4th at pp. 69–70.) " ' "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy

10

another unless the provision is the result of obvious mistake or error.' [Citations.]" (*Rodriguez v. Superior Court* (1993) 14 Cal.App.4th 1260, 1269.)

"If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . . [Citations.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) "When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008.) "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences. [Citation.]" (*People v. Jenkins* (1995) 10 Cal.4th 234, 246.)

Section 53075.5 provides, in relevant part: "(b) Each city or county shall provide for, but is not limited to providing for, the following: [¶] . . . [¶] (3) [¶] (A) *A mandatory controlled substance and alcohol testing certification program. The program shall include, but need not be limited to, all of the following requirements:* [¶] (i) *Drivers shall test negative for each of the controlled substances specified in* [*federal regulation 40.1 et seq.*]*, before employment.* Drivers shall test negative for these controlled substances and for alcohol as a condition of permit renewal or, if no periodic permit renewals are required, at such other times as the city or county shall designate. As used in this section, a negative test for alcohol means an alcohol screening test showing a breath alcohol concentration of less than 0.02 percent. [¶] (ii) *Procedures shall be substantially as in* [*federal regulation 40.1 et seq.*], except that the driver shall show a valid California driver's license at the time and place of testing, and except as provided otherwise in this section. . . . [¶] . . . [¶] (iv) *In the case of a self-employed independent driver, the test results shall be reported directly to the city or county, which shall notify the taxicab leasing company of record, if any, of positive results. In all other cases, the results shall*

11

*be reported directly to the employing transportation operator, who may be required to notify the city or county of positive results.* [¶] (v) All test results are confidential and shall not be released without the consent of the driver, except as authorized or required by law. [¶] . . . [¶] (B) No evidence derived from a positive test result pursuant to the program shall be admissible in a criminal prosecution concerning unlawful possession, sale or distribution of controlled substances. [¶] . . . [¶] (d) *Nothing in this section prohibits a city or county from adopting additional requirements for a taxicab to operate in its jurisdiction.*" (Italics added.)

According to appellants, because the express language of section 53075.5 provides that employees' drug test results "shall" be reported to the employer, the Legislature necessarily expressed its intent that all results *shall not* be reported to local government. Appellants are correct that "shall" ordinarily means "must" and is inconsistent with discretion. (*People v. Municipal Court* (*Hinton*) (1983) 149 Cal.App.3d 951, 954.) But, the trial court's and MGSA's interpretation of the statutory language does no violence to the "shall" in section 53075.5, subdivision (b)(3)(A)(iv). Under the MGSA Taxicab Regulations, the results of an employee's drug test *are* being reported to his or her employer. The question is what the statute provides with respect to reporting results to local government. With respect to employee test results, section 53075.5, subdivision (b)(3)(A)(iv) states that employers "may be required to notify the city or county of positive results." Nothing in section 53075.5, subdivision (b)(3)(A)(iv), explicitly prohibits reporting an employee's negative test results to local government.

Appellants also rely on *expressio unius est exclusio alterius* and argue, "the expression that the employer is the recipient of employees' drug test results necessarily involves exclusion of the city and county, which entities are not expressed." One could also argue that by stating employers "may be required to notify the city or county of positive results," the Legislature intended to exclude negative results. "A recognized rule of statutory construction is that the expression of certain things in a statute necessarily involves exclusion of other things not expressed—*expressio unius est exclusio alterius*." (*Henderson v. Mann Theatres Corp.* (1976) 65 Cal.App.3d 397, 403.) The problem with

12

appellants' argument is that it overlooks section 53075.5, subdivision (d), which invites local authorities to "adopt[] additional requirements for a taxicab to operate in its jurisdiction." Ignoring this language, as appellants ask us to do, would violate the fundamental rule that "[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage. [Citation.]" (*Big Creek Lumber Co. v. County of Santa Cruz, supra,* 38 Cal.4th at p. 1155.) The plain language of section 53075.5 compels local governments to promulgate regulations meeting the minimum requirements of the statute, but it also grants local government the authority to promulgate additional requirements not in conflict. MGSA has done just that. The MGSA Taxicab Regulations ensure that results of employee drug tests are provided to the employer, but they additionally provide for reporting all results to the MGSA. Thus, the MGSA Taxicab Regulations provide an "additional requirement," not a contradictory requirement.

Inasmuch as the plain language of section 53075.5 expresses a clear legislative intent to grant local government authority to include additional reporting requirements, we need go no further. But even if some ambiguity were to exist in the statutory language, our conclusion is reinforced by the legislative history.

During the 1994–1995 regular legislative session, drug and alcohol testing for taxicab drivers was proposed in Senate Bill No. 46, introduced by Senator Ayala. Originally, the bill proposed legislation that differs significantly from that ultimately enacted. (Compare Stats. 1995, ch. 405, § 1, pp. 2359–2361 with Sen. Bill No. 46 (1994–1995 Reg. Sess.) as introduced Dec. 19, 1994, p. 2.) A March 27, 1995 amendment to the bill proposed, in relevant part, that "[s]ection 53075.5 . . . [be] amended to read: [¶] . . . [¶] (b) Each city or county shall provide for, but is not limited to providing for, the following: [¶] . . . [¶] (3) A mandatory controlled substance and alcohol testing program that is functionally equivalent to the program required under Section 34520 of the Vehicle Code. The city or county shall require that tests be administered before employment and as a condition of permit issuance or renewal, and may require that the tests be administered after an accident and at random times. *Results of the tests*

13

*shall be reported directly to the city or county*, and shall not be used for criminal prosecution. . . ." (Sen. Amend. to Sen. Bill No. 46 (1994–1995 Reg. Sess.) March 27, 1995, pp. 2–3, some italics omitted.)

When Senate Bill No. 46 was amended again on April 25, 1995, the proposed reporting provisions first distinguished between employee drivers and independent contractors. (Sen. Amend. to Sen. Bill No. 46 (1994–1995 Reg. Sess.) April 25, 1995, p. 3.) Specifically, the April 25, 1995 amendment proposed, in relevant part: "(b) Each city or county shall provide for, but is not limited to providing for, the following: [¶] . . . [¶] (3) (A) A mandatory controlled substance and alcohol testing program that is functionally equivalent to the program required under Section 34520 of the Vehicle Code. . . . [¶] (B) *In the case of a self-employed independent contractor applying for a permit, the results of the test shall be reported directly to the city or county issuing the permit. In the case of an employee applying for a permit and in all other test instances, whether an employee or an independent contractor, the results shall be sent directly to the employing transportation operator or the taxicab leasing company who shall notify the applicable city or county of any positive test results.*" (Sen. Amend. to Sen. Bill No. 46 (1994–1995 Reg. Sess.) April 25, 1995, pp. 2–3.) Significantly however, the amendment also proposed recordkeeping and inspection requirements for employers and taxicab leasing companies. (*Id.* at p. 3.) The legislative history is not explicit about the reason for the amendment. However, the distinction apparently was made after the Taxicab Paratransit Association of California proposed the language italicized above.[7]

_____

[7] On April 17, 1995, the Taxicab Paratransit Association of California had written the Senate Transportation Committee to express its "concern [that it be made] clear that the adoption of this testing program does not result in an increased level of liability for employing transportation operators and taxicab leasing companies." Letters to legislators expressing support or opposition to a bill generally "do not aid in interpretation of the statute, but merely state the individual opinions of their authors." (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1062, fn. 5.) Here, however, we are not interested in the letters for the opinions stated therein, but rather because they illustrate the context in which the Legislature arrived at the ultimately enacted statute. They are relevant on this basis. (See *City of Brentwood v. Central Valley Regional Water Quality Control Bd.*

But it was not until the bill was further amended in the Assembly that the disputed language now found in section 53075.5, subdivision (b)(3)(A) first appeared. (Assem. Amend. to Sen. Bill No. 46 (1994–1995 Reg. Sess.) June 13, 1995, pp. 3–5.) Again, the legislative history is not explicit about the reason for the changes. However, on May 3, 1995, the League of California Cities had written Senator Ayala and the Senate Appropriations Committee and expressed its concerns with the legislation: "[C]ities are wary of the procedural and financial burdens this measure will impose on local agencies. Cities were in general, supportive of the earlier version of [Senate Bill No. 46], which was modeled after the private sector truck program in that *the employer is responsible for self policing their employees with federal oversight*. [Senate Bill No. 46] puts cities in the position of policing a whole class of independent private employees. Cities are extremely uncomfortable with this situation." (Italics added.)

On May 4, 1995, the California State Association of Counties had also written Senator Ayala to express its concern that "[Senate Bill No. 46] would put counties in the position of watching over a whole class of privately employed, independent individuals. We envision liability problems arising out of this responsibility to police taxicab drivers through county administration of drug and alcohol tests." Yet the California State Association of Counties still envisioned results of testing being reported directly to the city or county, and it also proposed the language that would become section 53075.5, subdivision (d).

Thereafter, on June 13, 1995, the inspection and recordkeeping requirements were removed and the language regarding reporting of employees' positive test results was changed from "shall notify the applicable city or county" to "*may be required to* notify the city or county of positive results."[8] (Italics added.) At the same time, subdivision (d)

_____

(2004) 123 Cal.App.4th 714, 728.) Furthermore, appellants have raised no objection to consideration of these legislative materials.

[8] Compare Senate Amendment to Senate Bill No. 46 (1994–1995 Reg. Sess.) April 25, 1995, pages 2–3 and Senate Amendment to Senate Bill No. 46 (1994–1995

15

of section 53075.5 was added, permitting cities and counties to adopt additional requirements for taxicab operations. (See fn. 8.)

Appellants maintain that their interpretation of section 53075.5 is "confirmed by the legislative history . . . , which demonstrates that the legislature expressly considered the very requirement that the MGSA seeks to impose . . . and rejected it." We disagree. The history of the legislation suggests that the Legislature intended to grant local government discretion with respect to the enforcement scheme. Nothing indicates that the Legislature intended to limit local government's authority so that it could *only* obtain positive test results from employees. And we cannot conceive that the Legislature would intend to so limit local discretion in the enforcement scheme but also include subdivision (d) in the statute. By removing record-keeping and inspection provisions from section 53075.5, adding subdivision (d), and providing in subdivision (b)(3)(A)(iv) that employers "*may be required to* notify the city or county of [an employee's] positive results," the Legislature demonstrated its intent to provide local government with flexibility. We agree with the trial court that "[t]he legislative purpose in adopting the statutory language was not to *force* these agencies to incur unwanted expense, oversight duties or liability in administering the drug testing program. If the Cities and Counties *voluntarily* decided it was in the interest of public safety to take a more active role in ensuring the sobriety of taxicab drivers, and to require the testing labs to also send *all* drug tests (for both independent and employee drivers) directly to them, there is nothing in the statute or in the legislative history to indicate that they should be prevented from adopting the additional regulation at issue here." (Some italics omitted.) Even if the statutory language was ambiguous, the legislative history shows an intent to allow local government precisely the kind of discretion that MGSA has exercised.

Appellants' reliance on the federal regulations does not assist their cause. It is undisputed that taxicab companies and drivers are not directly regulated by these federal

Reg. Sess.) May 10, 1995, page 3 with Assembly Amendment to Senate Bill No. 46 (1994–1995 Reg. Sess.) June 13, 1995 at pages 3–5.

16

regulations or the United States Department of Transportation (DOT).  (See fed. reg. 40.1.)  Rather, appellants point out that "[t]he [Claifornia] legislature . . . demonstrated its intent that [section 53075.5] be interpreted consistently with" certain federal regulations.  (See § 53075.5, subd. (b)(3)(A)(ii) ["[p]rocedures shall be substantially as in [federal regulation 40.1 et seq.]"].)  According to appellants, the MGSA Taxicab Regulations are not in "substantial compliance" with the federal regulations because they require release of all drug test results to a "third party."

Federal regulation 40.321 does not support this argument.  That section provides in relevant part:  "Except as otherwise provided in this subpart, as a service agent or employer participating in the DOT drug or alcohol testing process, you are prohibited from releasing individual test results or medical information about an employee to *third parties* without the employee's specific written consent."  (Italics added.)  But, "third party" is defined as "any person or organization to whom other subparts of this regulation do not explicitly authorize or require the transmission of information in the course of the drug or alcohol testing process."  (*Id.*, 40.321(a).)  And, the federal regulations specifically require employers to disclose test results, upon request, to federal, state, and local agencies.  (See *Id.*, 40.331(e) ["[i]f requested by a Federal, state or local safety agency with regulatory authority over you or the employee, you *must* provide drug and alcohol test records concerning the employee"].)[9]  Thus, MGSA is not a "third party" under the federal regulations.

---

[9] Federal regulation 40.331 provides, in relevant part:  "As an employer or service agent you *must* release information under the following circumstances: [¶] . . . [¶] (b) If you are an employer, you must, upon request of DOT agency representatives, provide the following: [¶] (1) Access to your facilities used for this part and DOT agency drug and alcohol program functions. [¶] (2) All written, printed, and computer-based drug and alcohol program records and reports (including copies of name-specific records or reports), files, materials, data, documents/documentation, agreements, contracts, policies, and statements that are required by this part and DOT agency regulations.  You must provide this information at your principal place of business in the time required by the DOT agency. [¶] (3) All items in paragraph (b)(2) of this section must be easily accessible, legible, and provided in an organized manner.  If electronic records do not

Contrary to appellants' contention, the MGSA Taxicab Regulations are not in substantial conflict with the federal scheme. We conclude that the challenged ordinance is not preempted by section 53075.5.

B.      *Exclusion of Expert Testimony*

Appellants also argue that the trial court abused its discretion by excluding Rose's expert testimony. We review the trial court's ruling on the admissibility of evidence for abuse of discretion. (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 928.)

We see no such abuse of discretion. Rose essentially opined that section 53075.5 did not give local entities the discretionary authority to require direct government reporting of all employee test results. This was the legal question to be decided by the court. "An expert witness may not properly testify on questions of law or the interpretation of a statute." (*Communications Satellite Corp. v. Franchise Tax Bd.* (1984) 156 Cal.App.3d 726, 747.) "The reason is that the lawyer-expert who expounds on the law usurps the role of the trial court." (*Summers v. A. L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1160.)

The authority relied on by appellants does not hold otherwise. (See, e.g., *Huber, Hunt & Nichols, Inc. v. Moore* (1977) 67 Cal.App.3d 278, 313 [involving expert testimony regarding standard of care applicable to architects]; *Western Medical Enterprises, Inc. v. Albers* (1985) 166 Cal.App.3d 383, 392 ["[a]t no point in the record cited by appellant [did the witnesses] testify as to the proper judicial interpretation of Medi-Cal rules and regulations"].) Appellants also misplace their reliance on *American Home Assurance Co. v. Hagadorn* (1996) 48 Cal.App.4th 1898, 1902–1903, *Fallbrook Sanitary Dist. v. San Diego Local Agency Formation Com.* (1989) 208 Cal.App.3d 753,

---

meet these standards, they must be converted to printed documentation that meets these standards. [¶] . . . [¶] (d) If requested by the National Transportation Safety Board as part of an accident investigation, you must provide information concerning post-accident tests administered after the accident. [¶] (e) *If requested by a Federal, state or local safety agency with regulatory authority over you or the employee, you must provide drug and alcohol test records concerning the employee*." (Italics added.)

18

764, and *Roberts v. Gulf Oil Corp*. (1983) 147 Cal.App.3d 770, 781–782.  These cases do not address an argument regarding the *admissibility* of expert opinion testimony on legislative intent.  Opinions are not authority for propositions not considered.  (*People v. Avila* (2006) 38 Cal.4th 491, 566.)  The trial court properly considered the legislative history in resolving the legal question presented.  Appellants have not demonstrated that the trial court abused its discretion.

## IV.  DISPOSITION

The judgment is affirmed.  Respondents are to recover their costs on appeal.


_____
Bruiniers, J.


We concur:


_____
Jones, P. J.


_____
Simons, J.